UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 11 |
| | ) | |
| FORD CITY CONDOMINIUM | ) | CASE NO. 21-5193 |
| ASSOCIATION, | ) | |
| | ) | HON. CAROL A. DOYLE |
| DEBTOR. | ) | |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on Thursday, August 5, 2021, at 10:00 am., I will appear before the Honorable Carol A. Doyle, or any judge sitting in that judge's place, and present the **MOTION OF THE UNITED STATES TRUSTEE TO REMOVE THE DEBTOR IN POSSESSION OR, IN THE ALTERNATIVE, TO DISMISS CASE** a copy of which is attached and is served on you.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is 161 155 8289 and the password is Doyle742. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

/s/ Jeffrey L. Gansberg
Jeffrey L. Gansberg, Attorney
OFFICE OF THE U.S. TRUSTEE
219 South Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 886-3327

## **CERTIFICATE OF SERVICE**

I, Jeffrey L. Gansberg, an attorney, certify under penalty of perjury that I caused a copy of this notice, attached motion and proposed order to be serviced on each entity shown on the attached service list at the address shown and by the method indicated on July 7, 2021, before 5:00 p.m.

/s/ *Jeffrey L. Gansberg*

## **SERVICE LIST**

**Registrants Served Through the Court's Electronic Notice for Registrants:**

- William B Avellone    bill.avellone@charteredmgt.com
- Matthew R Bowman    rbowman@lgattorneys.com
- Scott R Clar    sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com
- John J Conway    johnconway@shlawfirm.com
- Daniel W Diamond    ddiamond@goldenlawpc.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Phyllis Y Price    pprice@pricelawofc.com
- Peter A Siddiqui    peter.siddiqui@katten.com, ecfdocket@kattenlaw.com
- Shanita Q Straw    sstraw@goldenlawpc.com, G5700@notify.cincompass.com

**Parties Served via First Class Mail:**

*See Attached Exhibit 1 - Declaration of Mailing/Certificate of Service*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 11 |
| | ) | |
| FORD CITY CONDOMINIUM | ) | CASE NO. 21-5193 |
| ASSOCIATION, | ) | |
| | ) | HON. CAROL A. DOYLE |
| DEBTOR. | ) | |

**UNITED STATES TRUSTEE'S MOTION TO REMOVE THE DEBTOR IN POSSESSION OR, IN THE ALTERNATIVE, TO DISMISS CASE**

Patrick S. Layng, the United States Trustee for the Northern District of Illinois (the "**U.S. Trustee**"), by and through his attorney, Jeffrey L. Gansberg, moves pursuant to 11 U.S.C. § 1185(a) for an order removing the debtor, or in the alternative, dismissing this case pursuant to §1112(b) for "cause," (the "**Motion**"). In support of the Motion, the U.S. Trustee states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1134.

2. This is a core proceeding concerning the administration of the estate pursuant to 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine pursuant to IOP 15(A) and LR 40.3.1 of the United States District Court for the Northern District of Illinois.

3. Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The U.S. Trustee has standing to file the Motion under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

**FACTUAL SUMMARY**

5. Ford City Condominium Association (the "**Debtor**") commenced this case on April 20, 2021 (the "**Petition Date**"), by filing a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code. The Debtor filed its case as a Subchapter V bankruptcy case, and as a result, William Avellone was appointed as the Subchapter V trustee (the "**Trustee**').

6. The Debtor has been operating as a debtor and debtor-in-possession since the Petition Date.

**Management is Either Uninformed, or has Failed to Testify Fully and Accurately**

7. The Debtor appeared at two Section 341 meeting of creditors (the "**341 Meeting**").[1] During those meetings, the President of the Debtor's Board of Directors appeared to testify. In addition, because the President of the Board was not able to fully answer all the questions, other members of the board assisted the President with her testimony and provided information that the President was unable to provide. However, even with the assistance of other Board members, many questions regarding the Debtor's assets, liabilities, and financial situation remain unanswered, either in whole or in part.

8. For example, the President of the Board and other Board members could not provide more than an estimate of the number of vacant condominium units. In connection with those vacant units, they were uncertain of the ownership of and whether assessments are being paid on those units. Similarly, the President and Board members did not know the exact number of units for which the Debtor has received an order of possession and which it was renting to generate income. The President and the Board members believed it to be between four and six units. Additionally, they were not able to specifically quantify the income that the Debtor received from various sources – such as from the vending machine and from the laundry machines. Most perplexing, no one knew that the Debtor was not in good standing with the State of Illinois. And, as of July 7, 2021, that deficiency has not been corrected. *See* Corporation/LLC Search/Certificate

---

[1] The 341 Meeting was adjourned but not concluded to allow significant amendments to the Schedules and Statement of Financial Affairs.

of Good Standing attached hereto as **Exhibit A**. Similarly, the Debtor has not timely filed all of its tax returns.

9. For many of the questions raised at the 341 Meeting, the President and other Board members blamed the Debtor's former management company for their lack of information. Each testified that the former management company left them without records or other necessary information. However, that management company left in September 2018[2] and it appears that no one in charge of the Debtor has compiled accurate records from that point forward. Additionally, when the old management company left, members of the Debtor's Board executed a receipt acknowledging possession of many documents that they now testify that the Debtor was never provided. *See* VP Management Receipt, attached hereto as **Exhibit B**.

**Debtor's Management Engaged in Transactions with the Debtor without Proper Safeguards for the Debtor**

10. In addition to not knowing the facts and circumstances of the Debtor's financial position, at least some portion of the Board has engaged in financial transactions with the Debtor without providing appropriate safeguards for the Debtor. Further, certain relatives of members of the Board are employed by the Debtor (and were paid pre-petition wages post-petition).

11. At the 341 Meetings, the President of the Board testified that she purchased units from the Debtor.[3] She testified that she purchased the units for a fair value but then sold them for approximately twice what she paid shortly thereafter. And, she testified that she engaged in those transactions with the Debtor without providing it the benefit of legal counsel. She testified that she did not know it was necessary for the Debtor to be independently represented. Additionally,

---

[2] It was testified that the former management company just left and discontinued providing services.
[3] The Debtor previously had foreclosed on the units and was the owner of those units.

4

it appears that the sale may have violated the terms of the bylaws because no vote was taken by the unit owners whether to approve the sales.

12. In addition to purchasing and reselling units at a substantial profit, certain of the members of the Board, specifically, the President, have caused the Debtor to employ their family members. For instance, the President's husband is paid as a full-time employee of the Debtor, yet he works full time for the City of Chicago as a fireman. Similarly, the President's brother-in-law is paid as a full-time employee of the Debtor.

13. Because of the concerns with the current condominium board, the U.S. Trustee inquired about a change of management. To date, the U.S. Trustee is not aware of any changes that have been made.

**The Debtor Failed to Properly Complete Its Schedules and Statement of Financial Affairs**

14. During the 341 Meeting, it became clear that the Debtor had failed to properly complete its Schedules and Statement of Financial Affairs and that significant amendments are required.

15. Initially, the Debtor failed to disclose that it had two bank accounts, instead scheduling only one bank account. Similarly, the Debtor failed to schedule all of the personal property that it owned.

16. Moreover, the Debtor failed to disclose that there was a fire in one of the condominium buildings and that the Debtor was anticipating insurance proceeds for damages sustained in the fire. Based on further information, some portion of the insurance proceeds may be due to unit owners whose property was damaged by the fire.

17. Additionally, the Debtor failed to disclose certain pending litigation. Importantly, one of the undisclosed lawsuits alleges that the condominium Board breached their fiduciary duties

to the condominium association and the unit owners. *Stallworth et al. v. Ford City Condominium Association, et al.* (Case No. 2020 CH 05755). The same litigation seeks the production of the Debtor's books and records.

**The Debtor Has Subchapter V Procedural and Substantive Deficiencies**

<u>The Debtor Failed to Comply with Its Procedural Obligations under Subchapter V</u>

18. Not only are there questions about management's ability to guide the Debtor through this bankruptcy case because of their non-bankruptcy conduct, but this case has not been properly prosecuted by the Debtor.

19. Importantly, and as this Court noted at the initial hearing on the creditor's motion, the Debtor failed to take steps to ensure that the condominium owners would continue to have water service. It was only because the utility that provides the water filed its own motion requesting adequate assurance instead of enforcing its rights and turning off the water, that the condominium owners still have water service. There may be other utility providers that will not be as patient and that may terminate utility service (although the U.S. Trustee believes that none have done so to date).

20. Additionally, it was over 45 days from the Petition Date before the Debtor filed applications to retain counsel. It appears that those motions were delayed because the U.S. Trustee requested that counsel originally retained secure co-counsel to assist with this case. However, that request did not require a delay in the filing of the applications.

21. Importantly, although electing to proceed under Subchapter V, the Debtor failed to file the required status report that was due June 3, 2021. Indeed, as of the filing of this Motion, the status report has not been filed. Additionally, although the U.S. Trustee would not be involved in those discussions, he does not believe that the Debtor has taken any steps to secure a consensual

plan of reorganization. Rather, the U.S. Trustee does not believe that a consensual plan (or any plan) can be proposed until the Debtor understands its own finances and records and can properly account for all of its income and expenditures. In fact, the Debtor has filed a motion to extend its time to file a plan and is seeking an additional 60 days to do so.

The Debtor has failed to comply with its substantive obligations under the Bankruptcy Code

22. Despite filing for bankruptcy protection, the Debtor appears to be picking and choosing which substantive bankruptcy obligations that it follows.

23. For example, although filing for bankruptcy protection on April 20, 2021, the President testified that the Debtor has continued to pay at least a portion of its prepetition obligations.

24. Additionally, on May 21, 2021,[4] the Debtor filed its Monthly Operating Report for the month ending April 30, 2021 (the "**MOR**"). In the MOR, the Debtor disclosed that it had paid pre-petition obligations although it had no court order allowing it to do so. Compounding the concern raised by the payment of pre-petition obligations is that some of the pre-petition obligations paid include wages to insiders (relatives of members of the Board).[5]

25. Similarly, the Debtor indicated in the MOR that it allowed pre-petition checks to be paid post-petition.

## ARGUMENT

26. Cause exists to remove the Debtor as a debtor in possession or, alternatively, to dismiss this case.

---

[4] The MOR was originally filed on May 21, 2021 [Dkt No. 20] and was subsequently refiled on May 24, 2021 [Dkt No. 24].
[5] The Debtor late filed its May monthly operating report on July 7, 2021.

7

#### I. CAUSE EXISTS TO REMOVE THE DEBTOR OR DISMISS THIS CASE

27. Cause exists under both §1185 to remove the debtor as a debtor in possession and under §1112 to dismiss this case.

28. The Debtor's dishonesty, incompetence, and gross mismanagement evidence that it should be removed as debtor in possession. 11 U.SC. §1185(a).

29. Section 1185(a) of the Bankruptcy Code provides:

> On request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter.

11 U.S.C. §1185(a).

30. Currently, there are few reported decisions on §1185 of the Bankruptcy Code. However, as the basis for cause in §1185 mirrors the basis set forth in §1104(a)(1), cases interpreting the latter are instructive. *See In re Neosho Concrete Prods Co.*, 2021 WL 1821444, Case No. 20-30314, at *8 (Bankr. W.D. Mo. May 6, 2021); s*ee, e.g., Powerex Corp. v. Reliant Energy Servs., Inc.,* 551 U.S. 224, 232 (2007) ("[I]dentical words and phrases within the same statute should normally be given the same meaning.").

31. In relevant part, Section 1112(b) of the Bankruptcy Code provides that on the request of a party in interest, and after notice and a hearing, the court shall convert the case to Chapter 7 or dismiss the case, whichever is in the best interests of creditors of the estate, so long as the movant establishes "cause." *See* 11 U.S.C. § 1112(b)(1).

32. Section 1112(b)(4) sets forth a list of sixteen grounds that constitute "cause" for conversion or dismissal. *See* 11 U.S.C. § 1112(b)(4)(A)-(P). This list is not exhaustive, and a case

may be dismissed or converted for causes other than those specifically identified in section 1112(b)(4). *See In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009); *In Matter of Strug-Division, LLC*, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007). Gross mismanagement constitutes cause. *In re Stanford*, Case No. 19-01846-TOM-11, 2021 WL 973996 at *8 (Bankr. N.D. Ala. March 15, 2021).

33. "The court must convert a case to chapter 7 or dismiss the case if there is 'cause' to do so" unless the debtor can establish one of the exceptions. *See In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). Once cause is established, the debtor has the burden of proving the required exceptions to fend off conversion or dismissal. *Id.* To fend off conversion or dismissal, the court must find "unusual circumstances" "establishing that converting or dismissing the case is not in the best interest of creditors and the estate." 11U.S.C. §1112(b)(2). And, the debtor or another party must establish (A) there is a reasonably likelihood that a plan will be confirmed as provided for in sections 1121(e) and 1129(e) or within a reasonable time if those section do not apply **and** (B) "the grounds for converting or dismissing the case include an act or omission of the debtor other than paragraph [§1112(b)] (4A) – (i) for which there exists a reasonable justification for the act or omissions; and (ii) that will be cured within a reasonable period of time fixed by the court." *Id.*

34. In this case, because the Debtor is a not-for-profit corporation, the U.S. Trustee is unable to request conversion, so he requests dismissal. *See* 11 U.S.C. §1112(c).

**The Debtor's Conduct Constitutes Cause to Remove It as Debtor in Possession or to Dismiss this Case**

35. The Debtor's conduct throughout this case shows that it should be removed as the debtor in possession or that its case must be dismissed. Specifically, the Debtor has failed to comply with its obligations as a debtor and debtor in possession and violated express provisions

9

of the Bankruptcy Code. For example, the Debtor paid pre-petition obligations without court authority. Those payments not only violate the express terms of the Bankruptcy Code, but they evidence gross mismanagement of this estate. The gross mismanagement extends beyond those payments, some of which were to insiders, and includes self-dealing and the general lack of knowledge of the operations and financial position of the Debtor. Alone each constitutes cause to remove the debtor in possession or to dismiss this case. Collectively, they illustrate a pattern and practice that shows why this case will not succeed with the debtor in possession in a chapter 11. *See generally*, *In re Camelot Club Condo Ass'n, Inc.*, No. 09-62256-JB, 2011 WL 3962097, *3 (Bankr. N.D. Ga. Aug. 10, 2011) ("The Court advised the debtor from the outset of this case and at multiple hearings that a condominium association makes an unlikely candidate for a successful Chapter 11 reorganization").

**The Debtor Has Made Unauthorized Post-Petition Payments of Pre-Petition Debt and Engaged in Other Forms of Gross Mismanagement**

36. The President's conduct illustrates gross mismanagement on multiple levels both pre- and post-petition.

The Pre-Petition Transactions with Insiders

37. The President of the Board admitted that she engaged in self- interested transactions with the Debtor pre-petition. These transactions include real estate transactions with the Debtor without providing independent representation for the Debtor. Those transactions led to a profit for the President at the expense of the Debtor.

38. The President of the Board also provided conflicting testimony about payments made to her husband. At one point she testified that the Debtor paid her husband to install security

10

cameras at the premises. At the continued meeting of creditors when the issue arose again, she testified that he received no more than his usual salary.[6]

39. Similarly, the Board has caused the Debtor to retain the President's brother-in-law as a full-time employee.

40. To date, the U.S. Trustee is not aware that any actions have been taken to investigate these transactions or remove the President. Indeed, with the President in control of the Debtor, it is hard to see how any impartial investigation can occur.

The Post-Petition Transfers to Insiders Made in Violation of the Bankruptcy Code

41. In addition to improper pre-petition conduct by the Board, the Board has caused the Debtor to engage in improper post-petition conduct. Most obviously, and as documented in the May operating report, the Debtor made post-petition payment on account of prepetition obligation. Not only did the Board cause the Debtor to make improper payments, but these payments were made to insiders – the husband and brother-in-law of the President. Making those unauthorized transfers, particularly to insiders of the Debtor, constitutes cause to remove the debtor or dismiss this case. *See* 11 U.S.C. § 1112(b)(4)(B); *In re Products Int'l Co.*, 395 B.R. 101, 111 (Bank. N.D. Ariz. 2008); *see also, In re E. Paul Kovacs and Co., Inc.*, 16 B.R. 203, 205-06 (Bankr. D. Conn. 1981) (diminution of estate due to affiliates' use of debtor's property coupled with inability to reorganize constituted cause).

42. The Bankruptcy Code is clear – all activity outside of the ordinary course of business must first be approved by the Court before the action can be undertaken. *See* 11 U.S.C. §363(b)(1). It is axiomatic that the use of estate property to pay pre-petition obligations is outside of the ordinary course of business. Before making any payments of those obligations, the Debtor

---

[6] That response is no more satisfactory because he is a full-time employee of the City of Chicago and should not and cannot be a full-time employee of the Debtor.

was required to obtain Court approval pursuant to Section 363(b)(1). It did not do so. It nonetheless transferred the property and transferring property "in a manner not consistent with the Bankruptcy Code or an order of the court may subject the case to dismissal." *In re Wells*, 71 B.R. 554, 557 (Bankr. N.D. Ohio 1987) (citation omitted).

43. Gross mismanagement also constitutes cause to remove the Debtor as debtor in possession or dismiss this case. *See* 11 U.S.C. §§1104, 1112, 1185. The same conduct, using the Debtor's property outside of the ordinary course of business, also constitutes gross mismanagement. *See also, In re Alston*, Civil Action No. 13-1855, 2013 WL 6210249 at *7 (E.D. Penn. Nov. 27, 2013) (engaging in unauthorized transactions is gross mismanagement). The lack of an effective management team has been found to constitute gross mismanagement. *In re Products Intern. Co.*, 395 B.R. 101, 110-111 (Bankr. D. Az. 2008) (citations omitted). Here, the Debtor lacks an effective management team. In this case, the Debtor's management team may be worse than ineffective given their engaging in repeated self-serving and self-dealing transactions with the Debtor.

<u>The Debtor Breached Its Fiduciary Duty to Creditors</u>

44. Not only are the payments without proper authority cause to remove the debtor in possession or dismiss this case, but as a debtor-in-possession, the Debtor is a fiduciary for the estate and its creditors. *See In re Korn*, 523 B.R. 453, 468 (Bankr. E.D. Pa. 2014). By using property outside of the ordinary course of business without court authority, the Debtor violated its fiduciary duties to act in the best interest of its creditors. *See, In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001) (breach of fiduciary duty is cause); *In re NuGelt, Inc.*, 142 B.R. 661, 666 (Bankr. D. Del. 1992) (same); *In re Cloisters of Brevard, Inc.*, 117 B.R. 722, 723-24 (Bankr. M.D. Fla. 1990) (improper transfers of debtor's property were breaches of

fiduciary duty and cause to convert); *In re Telemark Mgmt. Co., Inc.*, 41 B.R. 501, 507 (Bankr. W.D. Wis. 1984) (same); *see also*, *In re 3868-70 White Plains Road, Inc.*, 28 B.R. 515, 519 (Bankr. S.D.N.Y. 1983) (case dismissed, in part, because "it appears that this debtor is oblivious to its fiduciary obligations" by making unauthorized post-petition payments.).

**The Debtor Has Failed to Meet Its Bankruptcy and Subchapter V Obligations**

45. Additional cause is the Debtor's failure to meet it bankruptcy and Subchapter V obligations.

46. As discussed above, the Debtor failed to take the proper steps to ensure that the water utility was treated properly under §366. Had the water utility so chosen, it could have cut off the water supply to the Debtor and the condominium unit owners.

47. Similarly, the Debtor failed to timely file its required status report. 11 U.S.C. § 1188(c); *see also*, Order Setting Dates for Status Conference and Report Due Under Section 1188 of the Bankruptcy Code [Dkt. No. 3].[7]

48. Further, the Debtor's plan is due July 17, 2021, less than a month from the date of the filing of this motion. Without an understanding of its finances and its income and obligations plus a plan to capture all of the available income, it is unlikely the Debtor will be in a position to propose a confirmable plan. Indeed, the Debtor alleges it does not even possess the books and records it needs to fully understand its own financial affairs. And, no extension should be available because it is clear that the delay is solely attributable to circumstances for which the Debtor should be held accountable.

49. Simply, the Debtor is not equipped to complete this case properly.

---

[7] The Debtor's failure to file its status report is another failure to comply with its obligations under the Bankruptcy Code and also violation of an order of this Court – both providing yet another basis to dismiss this case.

13

**The Debtor Cannot Satisfactorily Explain Its Financial Position**

50. This case should be dismissed because the Debtor's failure to adequately explain its financial position constitutes gross mismanagement.

51. At the 341 Meeting, the Debtor's representative was unable to answer questions regarding the Debtor's financial status. Even with assistance from other members of the condominium board, multiple questions were not answered, many questions had incomplete answers, and some questions were answered with conflicting information.

52. Additionally, as described above, the Debtor's management team has not kept adequate records of the Debtor's dealings. Moreover, the current management team does not seem to understand the pressing nature of a bankruptcy proceeding or of the Debtor's financial position generally.[8]

53. The self-dealing, breaches of fiduciary duty, lack of records, and utter failure to comply with its obligations as a debtor under the Bankruptcy Code and otherwise mandate that the Debtor be removed as a debtor-in-possession or that this case be dismissed.

## CONCLUSION

54. Based on the foregoing, the U.S. Trustee submits that cause exists under Section 1185 to remove the Debtor as a debtor in possession or, alternatively under Section 1112(b) to dismiss this case.

---

[8] The Debtor's representative could not explain why one creditor was listed as secured. Similarly, there was confusing testimony regarding the installation of a security system on the premises and how much was paid for that system – although it was clear that an insider was paid to complete the work. These are limited examples of the lack of knowledge of the current management team.

14

WHEREFORE, the U.S. Trustee respectfully requests this Court enter an order removing the debtor as debtor-in-possession, or, alternatively, dismissing this case, and for such other relief as this Court deems just.

          RESPECTFULLY SUBMITTED:

          PATRICK S. LAYNG
          UNITED STATES TRUSTEE

Dated: July 7, 2021      By:   */s/ Jeffrey L. Gansberg*
          Jeffrey L. Gansberg, Attorney
          OFFICE OF THE U.S. TRUSTEE
          219 South Dearborn Street, Room 873
          Chicago, Illinois 60604
          (312) 886-3327