# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | BK No.: 21-05193 |
| | ) | |
| FORD CITY CONDOMINIUM ASSOCIATION, | ) ) | |
| | ) | Chapter: 11 (Subchapter V) |
| Debtor. | ) ) | |
| _____ | ) | Honorable Carol A. Doyle |
| | ) | |
| WILLIAM AVELLONE, not individually but solely as the Subchapter V Trustee, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | AP No.: 23- _____ |
| | ) | |
| UNITED STATES LIABILITY INSURANCE COMPANY; and WENDY WATSON; EDGARDO ALEMAN; DIANE TODD; DAPHNE BROWNLEE; FRANCISCO CARRILLO; PAULINE PRATER; GREGORY CASTILLO; HILDA ZMORA; PROVIDENCIA GONZALEZ; EDGAR FRUTOS, EMMETT BROWN; TERRY REED; CARZIE JONES; YOUSEF DOULAH; MELISSA RANGEL; AND DIANE DEVROE, individually and in their capacities as former members of the Board of Managers of Debtor, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## COMPLAINT

William Avellone (the "Trustee" or "Plaintiff"), not individually but solely as subchapter

V trustee for the estate of the Ford City Condominium Association (the "Debtor"), by and through

his undersigned counsel, files this complaint against United States Liability Insurance Company

("USLI" or "Defendant USLI") seeking a declaratory judgment, and a remedy for breach of

contract and violation of Illinois Insurance Code Section 155.3, and against Wendy Watson ("Watson" or "Defendant Watson"); Edgardo Aleman("Aleman" or "Defendant Aleman"); Diane Todd ("Todd" or "Defendant Todd"); Daphne Brownlee ("Brownlee" or "Defendant Brownlee"); Francisco Carrillo ("Carrillo" or "Defendant Carrillo"); Pauline Prater ("Prater" or "Defendant Prater"); Gregory Castillo ("Castillo" or "Defendant Castillo"); Hilda Zmora ("Zmora" or "Defendant Zmora"); Providencia Gonzalez ("Gonzalez" or "Defendant Gonzalez"); Edgar Frutos ("Frutos" or "Defendant Frutos"); Emmett Brown ("Brown" or "Defendant Brown"); Terry Reed ("Reed" or "Defendant Reed"); Carzie Jones ("Jones" or "Defendant Jones"); Yousef Doulah ("Doulah" or "Defendant Doulah"); Melissa Rangel ("Rangel" or "Defendant Rangel"); and Diane Devroe ("Devroe" or "Defendant Devroe"),  individually and collectively in their capacities as former officers and members of the Board of Managers of the Debtor ("BOM" or "Former BOM Defendants"),  seeking remedies for breaches of fiduciary duty and other wrongful acts against the Debtor, and hereby alleges as follows:

## **INTRODUCTION**

1.      Prior to the filing of this bankruptcy case, certain of the Debtor's former officers and board members committed breaches of fiduciary duty, mismanagement, and other acts, errors, omissions, misstatements, misleading statements, neglect and breaches of duty under Illinois law and the Debtor's bylaws, which caused damage to the Debtor's estate and creditors of its estate – specifically the Debtor's unit holders (the "Unit Holder(s)") and creditors of the Debtor.

2.      Among other things, these wrongful acts by the former board members led the United States Trustee (the "U.S. Trustee") to file a motion to remove the Debtor as debtor-in-possession and appoint the Trustee to perform the Debtor's duties. Since that appointment, the

Trustee has done his best to administer the bankruptcy estate and perform the Debtor's duties with extremely limited resources.

3.      In order to maximize the value of the estate, enhance recoveries to creditors, and provide a remedy for harm and deliver necessary services to the Debtor's Unit Holders, the Trustee made a payment demand upon USLI, with whom the Debtor has a director and officer liability policy, for loss in connection with the pre-petition bad acts of the former board members, who are "Insureds" under the policy. However, USLI denied coverage under the policy's "Insured vs. Insured" exclusion.

4.      By this Complaint, the Trustee seeks a declaratory judgment that USLI is obligated to provide coverage under Debtor's insurance policy for certain claims held by the Debtor's bankruptcy estate against the Debtor's former officers and board members.

5.      By this Complaint, the Trustee also seeks to hold accountable those former officers and board members who caused significant and continuing harm to the Debtor in connection with the conduct of the affairs of the Debtor in administering and providing for the operation, care, upkeep, maintenance, replacement and improvement of the Debtor estate, as well as engaging in fraudulent and disloyal acts that converted Debtor assets and income to certain of the BOM Defendants' sole benefit.

## **PARTIES**

6.      The Trustee is the sub-chapter V trustee appointed in the Debtor's bankruptcy case and, pursuant to the Court's *Order Granting United States Trustee's Motion to Remove Debtor-in-Possession* (the "Removal Order") entered September 2, 2021, is charged with performing the Debtor's duties under 11 U.S.C. §§ 704(a)(8) and 1106(a)(1), (2), and (6).

7.      Accordingly, the Trustee is vested with, inter alia, the authority to pursue causes of action on behalf of the Debtor's estate including, without limitation, claims against the Debtor's former officers and board members for breaches of their duties to Unit Holders and harm caused to creditors of the bankrupt estate.

8.      Upon information and belief, USLI is an insurance corporation organized under the laws of the state of Nebraska with its principal place of business in Wayne, Pennsylvania.

9.      Upon information and belief, Defendant Watson is a resident of Chicago, IL, a Unit Holder and a former member of the BOM, purportedly serving as its President.

10.     Upon information and belief, Defendant Aleman is a resident of Chicago, IL, a Unit Holder and a former member of the BOM, purportedly serving as its Vice President.

11.     Upon information and belief, Defendant Todd is a resident of Chicago, IL, a Unit Holder and a former member of the BOM, purportedly serving as its Treasurer.

12.     Upon information and belief, Defendant Brownlee is a resident of Chicago, IL, a Unit Holder and a former member of the BOM, purportedly serving as its Secretary.

13.     Upon information and belief, Defendant Carrillo is a resident of Chicago, IL, a Unit Holder and a former member of the BOM, purportedly serving as its Administrator.

14.     Upon information and belief, Defendant Prater is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

15.     Upon information and belief, Defendant Castillo is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

16.     Upon information and belief, Defendant Zmora is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

17.     Upon information and belief, Defendant Gonzalez is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

18.     Upon information and belief, Defendant Frutos is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

19.     Upon information and belief, Defendant Brown is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

20.     Upon information and belief, Defendant Reed is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

21.     Upon information and belief, Defendant Jones is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

22.     Upon information and belief, Defendant Doulah is a resident of Burbank, IL, a Unit Holder and a former member of the BOM.

23.     Upon information and belief, Defendant Rangel is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

24.     Upon information and belief, Defendant Devroe is a resident of Chicago, IL, a Unit Holder and a former member of the BOM.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this adversary proceeding which arises in and relates to a case under the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), Case No. 21-BK-05193, under 28 U.S.C. §§ 157 and 1334.

26.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

27.     The statutory predicates for the relief requested herein are 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, and Federal Rule of Bankruptcy Procedure 7001(9).

## BACKGROUND

### A.  The Debtor's Pre-Petition Management and Insurance Policy

28.     The Debtor is a condominium association established pursuant to a certain Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws for Ford City Condominium, filed in the Office of the Recorder of Deeds of Cook County, Illinois on April 9, 1979 (the "Declaration").

29.     Under the Debtor's bylaws, as amended, it is managed by a board of managers elected by the Unit Holders.

30.     The board's responsibilities include levying and collecting assessments, maintaining and repairing common elements, maintaining necessary insurance, and preparing and providing itemized accounting of income and expenses of the association.

31.     The Debtor's board also elects board officers including a president, secretary, and treasurer.

32.     From 2019 through the date of the Debtor's bankruptcy filing, the Debtor's board members included Defendants Watson, Aleman, Todd, Brownlee, Carrillo, Prater, Castillo, Zmora, Gonzalez, and Frutos.

33.     Defendant Watson was the board's president, Defendant Brownlee was the board's secretary (and also the board's president), and Defendant Todd was the board's treasurer during this period.

34.     The board also had other members who had stepped down prior to the Petition Date, including Defendant Brown (2019-2020), Defendant Reed (2019 until 2021 sometime prior to the

Petition Date), Defendant Jones (2019-2020), Defendant Doulah (2019), Defendant Rangel, and Defendant Devroe (March-May 2019).

35.     The Debtor held a Community Association Directors and Officers Liability Policy (the "Policy") with USLI in effect from at least July 11, 2019 through July 11, 2022. A true and correct copy of the Policies in effect for that period is attached hereto as Group Exhibit 1.

36.     The Policy provides coverage for "Loss" (as defined by the Policy) not to exceed $1 million (One Million Dollars) for each claim or in the aggregate for "Wrongful Acts" by the "Organization" or the "Individual Insureds".

37.     The Debtor's former officers and board members fall under the Policy's definition of "Individual Insureds".

38.     However, the Policy also includes a list of exclusions from coverage including Exclusion 8 (the "Insured vs. Insured Exclusion") which provides, in relevant part:

> The Company shall not be liable to make payment for Loss or Defense Costs . . . in connection with any Claim made against the Insured arising out of, directly or indirectly resulting from or in consequences of, or in any way involving:
>
> (8) any Claim by, at the behest of, or on behalf of the Organization and/or any Individual Insured; provided that this Exclusion shall not apply to:
>
> > a.   any derivative action on behalf of, or in the name or right of the Organization, if such action is brought and maintained totally independent of, and without the solicitation, assistance, participation or intervention of any of the Insureds;
>
> (Group Ex. 1 at p. 16.)

**B.  The Debtor's Bankruptcy Filing and Trustee's Appointment**

39.     The Debtor has been in a difficult financial condition for many years.  In 2018, the outside property manager resigned and the board decided not to hire another property manager.

That decision left the Debtor to be self-managed by Unit Holders who serve on the board. A history of unpaid assessments and lack of capital reserves led to under-funding of operating cost and a serious under-investment in capital repairs.

40.     Mounting unpaid bills, poor record keeping and accounting practices, decaying building systems, plus mismanagement, eventually led to the filing of this bankruptcy case.

41.     On April 20, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Illinois (the "Court") and the Trustee was appointed as the subchapter V trustee.

42.     On July 7, 2021, the U.S. Trustee filed a motion to remove the Debtor as debtor-in-possession alleging, among other things, pre-petition self-dealing, breaches of fiduciary, failure to keep records, and gross mismanagement by the Debtor's former officers and board members.

43.     On September 2, 2021 the Court entered the Removal Order granting the U.S. Trustee's motion to remove the Debtor as debtor-in-possession.

**C. The Trustee's Written Demand on USLI and USLI's Denial of Coverage**

44.     On July 6, 2022, the Trustee issued a written demand (the "Demand Letter") for coverage and payment for loss upon USLI, among others, in connection with claims held by the Debtor's bankruptcy estate and its creditors for acts committed by the Debtor's former officers and board members for pre-petition acts including breaches of fiduciary duty, mismanagement, and other acts, errors, omissions, misstatements, misleading statements, neglect and breaches of duty under Illinois law and the Debtor's bylaws which caused damage to the Debtor's estate and its creditors. A true and correct copy of the Demand Letter is attached hereto as Exhibit 2.

45.   On or about July 15, 2022, USLI responded to the Demand Letter and denied coverage for the Trustee's asserted claims. A true and correct copy of USLI's response (the "Denial Letter") is attached hereto as Exhibit 3.

46.   USLI denied coverage on the basis of Exclusion 8 – the Insured vs. Insured Exclusion, stating that the Trustee is an "Insured," his claims are against "Insureds," and the Trustee did not bring a derivative claim.

47.   On or about March 2, 2023, the Trustee sent a follow-up letter to USLI disputing its interpretation of the Insured vs. Insured Exclusion and its application to the Trustee's claims, and again demanding that USLI make payment upon the Trustee's claims. A true and correct copy of the Trustee's follow-up letter is attached hereto as Exhibit 4.

48.   The Trustee and USLI have been unable to resolve their Policy coverage disputes.

## COUNT I
### (Declaratory Judgment Against USLI)

49.   The Trustee repeats and re-alleges the allegations of all preceding paragraphs as though fully set forth herein.

50.   The Trustee has made a timely, written demand upon USLI for coverage and payment for loss suffered by the Debtor's estate and its creditors.

51.   USLI has denied coverage and payment for the Trustee's claims.

52.   Accordingly, the Trustee submits that an actual and justiciable controversy presently exists between the Trustee and USLI regarding whether USLI is obligated to provide coverage and payment for loss in connection with the Trustee's claims against the Debtor's former officers and board members.

53.     The entry of a declaratory judgment by this Court is necessary to resolve the dispute between the parties with regard to USLI's rights and obligations under the Policy concerning the Trustee's claims against the Debtor's former officers and board members.

**WHEREFORE**, the Trustee respectfully requests entry of judgment in his favor and against USLI on Count I of this Complaint, declaring that USLI is required under the Policy to provide coverage for the claims held by the Debtor's estate against the former board members and officers, and granting the Trustee such other and further relief as the Court deems just and proper.

<u>**COUNT II**</u>
**(Breach of Contract Against USLI)**

54.     The Trustee repeats and re-alleges the allegations of all preceding paragraphs and Counts as though fully set forth herein.

55.     At all times relevant to this Complaint, Defendant USLI contracted with Debtor to provide coverage under the terms and conditions of the Policy provided by USLI to the Debtor.

56.     The Debtor made all payments necessary to maintain the Policy in full force and effect, and made a demand for coverage in compliance with all the conditions precedent.

57.     Upon the filing of this bankruptcy case, by action of law, all claims and causes of action belonging to creditors become the property of the Debtor's estate and such actions and claims may only be brought by the Trustee.

58.     The Trustee made a demand for coverage on behalf of the Unit Holders and bankruptcy creditors under the Policy.

59.     Defendant USLI has failed and refused to honor its contractual obligations to the Trustee in that it has refused to provide coverage for claims held by the Debtor's estate against the BOM Defendants.

60.     That the breach of contract by USLI is ongoing, vexatious and unreasonable.

**WHEREFORE**, the Trustee respectfully requests entry of judgment in his favor and against USLI on Count II of this Complaint finding that USLI is in breach of contract and required under the Policy to provide coverage for the claims held by the Debtor's estate against the BOM Defendants, and granting the Trustee such other and further relief as the Court deems just and proper.

<u>**COUNT III**</u>
**(Section 155 Claim For Vexatious And Unreasonable Conduct against USLI)**

61.    The Trustee repeats and re-alleges the allegations of all preceding paragraphs and Counts as though fully set forth herein.

62.    At all relevant times herein, there was in effect in the State of Illinois the following statute:

(1)    In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a)    60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)    $60,000;

(c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155(1).

63.    That USLI has engaged in the following vexatious and unreasonable conduct in the handling and investigation of this claim by the Trustee:

a.    Intentionally, knowingly and fraudulently sent a letter to the Trustee denying coverage for the claims held by the Debtor's estate against the former board

11

members and officers as excluded by the "Insured vs Insured" provision without reviewing the case law in the relevant jurisdiction which holds contrary precedent;

b. Intentionally, knowingly and fraudulently maintained its position of denial in the face of case law and other legal precedent provided to it in the Trustee's letter dated March 2, 2023 (attached hereto as Exhibit 4), and failing to provide any response to the 3/2/2023 letter;

c. Intentionally, knowingly and fraudulently, denied the claims of the Trustee;

d. Intentionally, knowingly and fraudulently forced the Trustee to file suit to receive coverage under the Policy; and

e. Otherwise engaged in acts which constitute improper claims practices and/or vexatious and unreasonable conduct.

64.     That as a direct result of the actions of USLI, Trustee has suffered and continues to suffer damages resulting from the failure of USLI to honor its obligations under the Policy.

65.     That USLI's denial of coverage is ongoing, vexatious and unreasonable.

**WHEREFORE**, the Trustee respectfully requests entry of judgment in his favor and against USLI on Count III of this Complaint finding that USLI is in violation of 215 ILCS 5/155(1) and required under the Policy to provide coverage for the claims held by the Debtor's estate against the former board members and officers, and that USLI must pay penalties outlined in 215 ILCS 5/155(1), including reasonable attorneys' fees and costs, *inter alia* and granting the Trustee such other and further relief as the Court deems just and proper.

## COUNT IV
### (Breach of Fiduciary Duty against the BOM Defendants)

66.     The Trustee repeats and realleges the allegations of paragraphs 1-48 as though fully set forth herein.

67.     The Debtor's condominium property comprises seven (7) apartment buildings, 319 residential condominium units, and 38 garage units; each of which constitutes a "Unit" and all of which constitute the "Units'" with all land and areas of the property not located within a Unit constituting the common elements.

68.     Each Unit in the property is assigned through the Declaration an undivided percentage interest of ownership in the common elements.

69.     All of the Units and common elements comprising the Debtor property are owned by the Unit Owners, who make up the members of the condominium association.

70.     Pursuant to Section 18.3 of the Illinois Condominium Property Act (765 ILCS 605/1 *et seq.*, the "Condominium Act"), the condominium association is responsible for the overall administration of the property comprising the Debtor property through its duly elected board of managers.

71.     As provided in Section 18.3 of the Condominium Act, the condominium association has all powers necessary or convenient to effect the purposes for which the condominium association was organized and to do every other act not inconsistent with law which may be appropriate to attain the purposes set forth in the Condominium Act or in the condominium instruments[1]. A true and correct copy of the Declaration, with the amendments thereto, is attached hereto as Group Exhibit 5.

---

[1] The term "condominium instruments" is a defined term under Section 2(l) of the Condominium Act and means "all documents and authorized amendments thereto recorded pursuant to the provisions of the [Condominium] Act, including the declaration, bylaws and plat."

72.    As reflected in the Declaration, the purpose of the condominium association, known as Ford City Condominium Association, is to promote and protect the co-operative aspect of ownership and to facilitate the proper administration of the Debtor property and for the purpose of enhancing and perfecting the value, desirability and attractiveness of the property.

73.    The broad powers, duties and authority of the condominium association are allocated by the Condominium Act and the Bylaws between (a) the board of managers and (b) the members/Unit Holders, respectively.

74.    As provided in Section 18.4 of the Condominium Act, "[i]n the performance of their duties, the officers and members of the board, whether appointed by the developer or elected by the unit owners, shall exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (emphasis added).

75.    As a fiduciary of the Unit Holders, the BOM Defendants, both collectively and individually, were bound by a strict duty to treat the Unit Holders with the utmost candor, rectitude, care, loyalty and good faith.

76.    Included within the scope of the fiduciary duty owed by the BOM Defendants to the Unit Holders is a strict obligation to abide by the applicable provisions of the Condominium Act and the terms, requirements and procedures specified in the Declaration and bylaws of the Debtor.

77.    Instead of fulfilling their duties as fiduciaries to Debtor to act with loyalty, full disclosure, and candor to all Unit Holders, the BOM Defendants, individually and collectively failed entirely to administer the operations of the Debtor with the openness and transparent nature as required by the Declaration and the Condominium Act.

### D. Failure To Deliver Annual Itemized Accounting Of Expenditures

78.     The Declaration provides, at Article VI, Paragraph 1 in pertinent part as follows:

"Each year on or before November 15th, the Board shall estimate the total amount
necessary to pay the cost of wages, materials, insurance, services, supplies and fees
which will be required during the ensuing calendar year for the rendering of all services,
together with a reasonable amount determined by the Board for a reserve for
contingencies and replacements. Each Owner shall receive at least thirty (30) days prior
to the adoption thereof by the Board, a copy of the proposed annual budget. Each
Owner shall receive notice, in the same manner as is provided in the Condominium
Property Act for membership meetings, of any meeting of the Board concerning the
adoption of the proposed annual budget or any increase, or establishment of an
assessment. …On or before April 1st of each calendar year following the initial
meeting, the Board shall supply to all Owners an itemized accounting of the common
expenses for the preceding calendar year actually incurred and paid, together with a
tabulation of the amounts collected pursuant to the budget or assessment, and showing
the net, excess or deficit of income over expenditures plus reserves. … Any amount
accumulated in excess of the amount required for expenditures and reserves shall be
credited according to each Owner's percentage of ownership in the Common Elements
to the next monthly installments due from Owners under the current year's estimate,
until exhausted, and any net shortage shall be added according to each Owner's
percentage of ownership in the Common Elements to the installments due in the
succeeding six months after rendering of the accounting."

79.    Also incorporated into the bylaws of the condominium association by mandatory inclusion pursuant to §18(a)(7) of the Condominium Act is the following substantially similar, but slightly different provision related to annual accounting to members in pertinent part as follows:

that the board of managers shall annually supply to all unit owners an itemized accounting of the common expenses for the preceding year actually incurred or paid, together with an indication of which portions were for reserves, capital expenditures or repairs or payment of real estate taxes and with a tabulation of the amounts collected pursuant to the budget or assessment, and showing the net excess or deficit of income over expenditures plus reserves.

80.    The BOM Defendants did not in at least the four (4) years preceding this bankruptcy filing provide Unit Holders an itemized accounting as required by the Declaration and the Condominium Act.

**E.  Failure To Maintain And Repair Debtor Property**

81.    The Declaration provides the "General Powers of the Board" at Article V, Paragraph 7, requiring the Board of Managers to use the assessments and pay for, inter alia: heat, water, waste removal, utilities, insurance, painting, cleaning, tuckpointing, maintenance, repair and replacement of the common elements.

82.    Despite the BOM Defendants collecting assessments from Unit Holders, the Debtor property remained in disrepair and received frequent, regular and continuing failed inspections indicating violation of City ordinances.

83.    Numerous failed Chicago inspection violations from April 2019 and continuing to the present day for the Debtor property buildings remain open, showing inter alia: failed elevator equipment (for which the BOM Defendants levied thousands of dollars in special assessments for

nearly a decade); roof leaks and water damage into Units and the common areas; damaged doors; missing smoke detectors; inadequate heat; peeling paint; roach infestations; electrical violations such as exposed wires, painted over outlets and needed GFI outlets (Defendants Watson and Carrillo allegedly refused inspection access to electrical meter room to resolve power shutoff to a Unit); fractured exterior masonry; building façade falling; brick arches in severe disrepair, causing dangerous and hazardous conditions; missing window screens; window and frame failures; heating and air conditioning unit failures; soiled carpeting; missing structural lintels for removed A/C units; and water and sewer pipe failure, deteriorating and leaking roof deck over parking garage.

84.     Because the BOM Defendants failed to adequately maintain the property, it resulted in significant damage to the property which has already and in the future will cost the bankruptcy estate significant funds to repair, including the elevators which were not maintained, plumbing which was not maintained both above ground and below which caused significant water damage, the parking lot and streets owned by the Debtor which are in serious disrepair and need significant work as a matter of safety, the building where a bakery is located is unusable in certain areas because it is in such disrepair that it is unsafe, and the unfilled and unused swimming pool poses a hazard and potential liability to the Debtor and the Unit Holders.

85.     Unpaid water bills of $940,000.00 (nine hundred forty thousand dollars) caused the filing of a lawsuit by SFI Ford City against the Debtor in the Circuit Court of Cook County, under case number 2018 L 8190, which case remains pending and undetermined.

**F.  Failure To Apply Special Assessments Collected For Mandated Repairs To Stated Purpose**

86.     The BOM Defendants levied a special assessment in October 2018, to pay for, inter alia, mandatory elevator repairs, payable in a lump sum of $1,946.40 (One Thousand Nine Hundred Forty Six and 40/100 Dollars) or in equal installments over a six-month period.

87.     On information and belief, the same elevator violations for the Debtor property's buildings continue to be raised, and the special assessment payments collected were not used to correct the violations.

88.     The Debtor has been in building court with the City of Chicago fighting off receivership since 2011 in Case No. 2011 M1 401304, and on August 13, 2014, agreed to an Agreed Order of Injunction with Settlement that provided inter alia for the payment of a $2,500 fine and an obligation to bring the property into full compliance with Chicago's municipal code by 10/31/2018. A copy of the 8/13/2014 Agreed Order of Injunction with Settlement is attached hereto as Exhibit 6.

89.     On August 15, 2018, the terms of the Agreed Order of Injunction with Settlement were modified pursuant to an Agreed Order2 that extended the full compliance deadline to December 31, 2020, with an inspection date of January 31, 2021. A copy of the 8/15/2018 Agreed Order is attached hereto as Exhibit 7.

90.     Shortly thereafter on September 13, 2018, the Debtor's board of managers terminated the services of their property manager, VP Property Management, and certain board members countersigned on written correspondence on VP Property Management letterhead that, as of 9/14/2018, VP Property Management had turned over to certain of the BOM Defendants and others "all documents relating to the Ford City Condominium Association" including certain specified records. A copy of the 9/13/2018 VP Property Management countersigned letter is attached hereto as Exhibit 8.

91.     The Declaration provides, at Article V, Paragraph 8, the following in pertinent part:

---

2 The 8/15/2018 Agreed Order refers to a "consent decree entered on 4/13/2014," which appears to be incorrectly referencing the Agreed Order of Injunction with Settlement that was entered on 8/13/2014.

> Liability of the Board of Managers. Neither the members of the Board nor the officers
>
> shall be liable to the Owners for any mistake of judgment or for any other acts or
>
> omissions of any nature whatsoever as such Board members and officers, except for
>
> any acts or omissions found by a court to constitute wilful [sic] misconduct  in the
>
> performance of duty.

92.     On information and belief, following the termination of VP Property Management
and the extension of the compliance deadline to the end of 2020, the BOM Defendants at that time
undertook to intentionally and willfully mismanage the Debtor and deliberately fail to maintain
the property in order to personally benefit themselves in advance of the end-of-2020 deadline, after
which the Debtor would be placed into receivership.

93.     Also notable is the significant reduction in the budgeted amount for "Apt Rental"
for years 2018 through 2020 (from $18,000 in 2018 down to $12,000 for 2019 and 2020), as against
$172,200 budgeted for 2017 Apt Rental – a greater than 90% drop from 2017. See proposed
budgets attached as Group Exhibit 9.

**G.  Contracting With Family Of Board Members Without Notice Or Approval**

94.     Incorporated into the bylaws of the Debtor by mandatory inclusion pursuant to
§18(a)(16) of the Condominium Act is the following provision related to contracting with board
members or related companies, in pertinent part as follows:

> the board of managers may not enter into a contract with a current board member or
>
> with a corporation or partnership in which a board member or a member of the board
>
> member's immediate family has 25% or more interest, unless notice of intent to enter
>
> the contract is given to unit owners within 20 days after a decision is made to enter into

the contract and the unit owners are afforded an opportunity by filing a petition, signed

by 20% of the unit owners, for an election to approve or disapprove the contract….

95.     On information and belief, the husband and brother-in-law of Defendant Watson

were paid by the Debtor to provide janitorial and other services to the property.

96.     Unit Holders were not provided with notice of any intent to contract with Defendant

Watson's family members and have never provided any approval for any such contract.

**H. Surrepititiously Recording Conversations Without Consent**

97.     On information and belief, at the direction of Defendant Watson the husband and/or

brother-in-law of Defendant Watson installed a multitude of surveillance cameras in and around

the Debtor property that record both video and audio without the consent of the persons conversing,

in violation of Illinois' eavesdropping law (720 ILCS 5/14[3]).

**I. Selling Association-Owned Units to Board Members Without Approval**

98.     The Declaration provides, at Article V, Paragraph 7(l) in pertinent part as follows:

"General Powers of the Board.:

(l) All agreements, contracts, deeds, leases, vouchers for payment of expenditures and

other instruments shall be signed by such officer or officers, agent or agents of the

Board and in such manner as from time to time shall be determined by written

resolution of the Board. In the absence of such determination by the Board, such

documents shall be signed by the Treasurer and countersigned by the President."

---

[3] A person commits eavesdropping when he or she knowingly and intentionally:
1.   Uses an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or
     recording all or part of any private conversation to which he or she is not a party unless he or she does so
     with the consent of all of the parties to the private conversation. 720 ILCS 5/14-2(a)(1)

99.     On June 21, 2019, Defendant Watson signed a quitclaim deed on behalf of the Debtor as "President," conveying to Defendant Carrillo  Unit A-408 owned by the Debtor, with consideration shown in the Cook County Recorder of Deeds' office of $15,000. A copy of the recorded deed to Defendant Carrillo is attached hereto as Exhibit 10.

100.    The deed to Defendant Carrillo bears no signature of the Treasurer of the Debtor.

101.    On information and belief, Defendant Carrillo received rental payments for Unit A-408, which payments should properly have been paid to the Debtor for the benefit of all Unit Holders.

102.    On June 21, 2019, Defendant Carrillo signed two (2) quitclaim deeds on behalf of the Debtor as "Administrator," conveying to Defendant Watson and her husband, Brent Watson, Unit A-801 and Unit C1-205, both Units owned by the Debtor, with consideration shown in the Cook County Recorder of Deeds' office of $18,000 for each Unit. A copy of the recorded deeds to Defendant Watson (and her husband) are attached hereto as Group Exhibit 11

103.    The deeds to Defendant Watson (and her husband) bear no signature of the Treasurer of the Debtor.

104.    On October 23, 2019, Defendant Watson and her husband, Brent Watson, conveyed the previously improperly owned Unit C1-205 by quitclaim to Defendant Zmora, with consideration shown in the Cook County Recorder of Deeds' office of $30,000. A copy of the recorded deed to Defendant Zmora is attached hereto as Exhibit 12.

105.    On information and belief, Defendant Watson received rental payments for Units A-801 and C1-205, and continues to receive rental payments for Unit A-801, in addition to Watson being paid by Defendant Zmora to purchase Unit C1-205, all of which payments are or were properly owed to the Debtor for the benefit of all Unit Holders.

106.    On information and belief, Defendant Zmora has received and continues to receive rental payments for Unit C1-205, which payments should properly be paid to the Debtor for the benefit of all Unit Holders.

107.    Neither the Debtor nor the Unit Holders have waived or provided any approval that would allow for Defendants Watson, Carrillo or Zmora, or any of the other BOM Defendants to contract with the Debtor and purchase any Units owned by the Debtor.

### J.    Levying Assessments For Common Elements & Exceeding Prior Year Assessments By More Than 115% Without Proper Notice or Approval

108.    The Declaration provides at Article III, Paragraph 1 in pertinent part as follows:

Description. Except as otherwise in this Declaration provided, the Common Elements shall consist of all portions of the Property except the Units. Without limiting the generality of the foregoing, the Common Elements shall include the …outdoor Parking Areas[4]….

109.    The Declaration provides at Article III, Paragraph 2, in pertinent part as follows:

Ownership of Common Elements. Each Owner shall own an undivided interest in the Common Elements as a tenant in common with all other Owners of the Property, and, except as otherwise limited in this Declaration, shall have the right to use the Common Elements for all purposes incident to the use and occupancy of each Unit for housing purposes, and such other purposes permitted by this Declaration, which right shall be appurtenant to and run with each Unit.

110.    Incorporated into the bylaws of the Debtor by mandatory inclusion pursuant to §18(a)(8)(v) of the Condominium Act is the following provision related to assessments for alterations to the common elements not included in the adopted annual budget:

that assessments for additions and alterations to the common elements or to association-owned property not included in the adopted annual budget, shall be separately assessed and are subject to approval of two-thirds of the total votes of all unit owners.

---

[4] "Parking Area" is defined in Article I as "That part of the Common Elements provided for parking automobiles as shown on Exhibit "6" [plat of survey] attached [to the Declaration]"

111.    Also Incorporated into the bylaws of the Debtor by mandatory inclusion pursuant to §18(a)(8)(ii) of the Condominium Act is the following provision related to year-over-year assessment increases:

> that … if … any separate assessment adopted by the board would result in the sum of all regular and separate assessments payable in the current fiscal year exceeding 115% of the sum of all regular and separate assessments payable during the preceding fiscal year, the board of managers, upon written petition by unit owners with 20 percent of the votes of the association delivered to the board within 21 days of the board action, shall call a meeting of the unit owners within 30 days of the date of delivery of the petition to consider the … separate assessment; unless a majority of the total votes of the unit owners are cast at the meeting to reject the budget or separate assessment, it is ratified….

112.    Unit Holders and Unit occupants received a letter dated 08-03-2020, from "Management" indicating that the BOM Defendants made an arrangement to extensively repair all of the property outdoor parking lots within the next weeks. A copy of the 08-03-2020 letter is attached hereto as Exhibit 13.

113.    The parking lot repair letter also indicated that upon completion of the parking lot repairs there would be an immediate monthly charge of seventy-five dollars ($75.00) for each parking space, although the price would increase to one hundred dollars ($100) monthly for the third parking space purchased for a Unit.

114.    Neither the cost for parking lot repairs nor any addition to assessments was covered in the Debtor's proposed 2020 budget.

115.    No open board meeting was held to vote on taking on a parking lot repair project or charging assessments for use of a common element owned by all Unit Holders.

116.    If there had been such an open board meeting, it would provide Unit Holders proper notice of the said parking lot repair project and intention to levy an assessment for a common element, and an opportunity for Unit Holders to petition pursuant to the Declaration and the Condominium Act to reject the decision, as the repairs are neither mandated nor emergency, and

the monthly charge for a parking space increases Plaintiffs' assessments (which are less than $400 monthly) to a figure greater than 115% of their prior year's assessment.

117.    Nothing in the Declaration or the Condominium Act provided authority for the BOM Defendants to levy a regular assessment to Unit Owners for a Common Element.

118.    The parking lot repair letter states further that after the outdoor parking area is completed, parking spaces will be assigned and recorded, and stickers used to identify that a vehicle is in an assigned space for which the monthly charge was paid, and that any vehicle without proper credentials would be towed.

119.    Unit Holders were and continue to be subject to having their vehicles towed for parking in the outdoor parking area which they own (as it is a Common Element), if they do not pay the Debtor the improper monthly charge (of $75-100); and if Unit Holders park their vehicles on the nearby public street, their vehicle is in a less safe area and subject to mayhem or theft.

120.    In breach of their duty of loyalty to the Unit Holders, the BOM Defendants, individually and collectively, have acted on their own to usurp the authority of the Unit Holders with respect to increasing their assessments and levying special assessments beyond 115% over the prior year; not provided an itemized accounting of their expenditures; illegally surveilled the Unit Holders, occupants and guests; and taken from the Debtor for themselves, units owned by the Debtor along with rents otherwise payable to the Debtor, and equity increase in Unit value that would accrue to the Debtor (and thereby to all Unit Holders).

121.    Each member of the BOM Defendants is a sophisticated party who knows and understands, or should know and understand, the meaning and scope of his or her respective fiduciary duty owed to the Unit Holders.

122.    Accordingly, the actions of the BOM Defendants, individually and collectively, in breach of their fiduciary duty owed to the Unit Holders as complained of herein were intentional, willful, wanton, knowing, oppressive, constitute a gross overreach of authority, and are in bad faith.

123.    As a result of the breaches of fiduciary duty committed by the BOM Defendants, individually and collectively, the Debtor estate and Unit Holders sustained significant and irreparable harm in the loss of value of the condominium property, monetary damages in the form of improper conversion of revenue and payments that were intended for maintenance and repair, and attorneys' fees and other costs wrongfully incurred due to the BOM Defendants' unauthorized actions.

**WHEREFORE**, the Trustee respectfully requests entry of judgment in his favor and against the BOM Defendants on Count IV of this Complaint finding that each of the BOM Defendants has breached their fiduciary duty to the Debtor and Unit Holders and caused harm to the Debtor's estate and consequently the  Unit Holders and the Debtor's creditors; requiring the BOM Defendants to restore to the Debtor ownership of any property improperly conveyed to them without proper authority, and to relinquish and repay to the Debtor all rents, payments or other monies improperly received by them, along with interest and costs; and granting the Trustee such other and further relief as the Court deems just and proper.

Dated:  April 19, 2023                    **WILLIAM AVELLONE, SUBCHAPTER V**
                                          **TRUSTEE OF THE FORD CITY**
                                          **CONDOMINIUM ASSOCIATION**

                                          By: /s/ Phyllis Y. Price_____
                                               One of His Attorneys

                                          Phyllis Y. Price, Esq.
                                          LAW OFFICE OF PHYLLIS PRICE
                                          1010 Lake St., Suite 200

Oak Park, IL 60301
Telephone:  (312) 379-0044
pprice@pricelawofc.com