# GROUP EXHIBIT

# 1

**business resource center**    bizresourcecenter.com

# RESOURCES TO HELP YOUR BUSINESS GROW!

As a policyholder through USLI or Devon Park Specialty, you have access to many services through the Business Resource Center that will assist you in growing and protecting your business. Consider the following services and associated cost savings when making your decision where to place your insurance!

### HUMAN RESOURCES



» Free human resources consultation hotline to be used for personnel issues including harassment and discrimination, the Family and Medical Leave Act, disability, wage and hours regulations and more
» Online library with information, forms and articles pertaining to human resources
» Discounted human resources management system
» Resources for recruiting and training as well as termination and administration

### PRE-EMPLOYMENT AND TENANT SCREENINGS



» Discounted background checks, including multi-court criminal database searches, county criminal searches and more (first background check is free)
» Best practices for performing a background check
» Discounted tenant and drug screenings and Motor Vehicle Reports (MVRs)

### PAYROLL AND TAXES



» Payroll processing and tax services tailored for either a small or large business
» Online business tax workshop provided by the Internal Revenue Service (IRS)



**Try our cost savings calculator to see how much you could save!**

### CYBER RISK



» Materials about securing personal information and payment card information
» Complimentary access to tools and resources that will help you understand your exposure to a data breach and the importance of a response plan
» Discounted identity theft monitoring and recovery

### MARKETING



» Suggested free and paid services for web marketing for your business, including email campaigns, photo editing, file management and more
» Suggested free and paid services for social media platforms, development, management and more
» Discounted website package and access to consultants, designers and developers to help in the creation of a website for your business
» Suggested free and paid services for building your own website and tracking Search Engine Optimization (SEO)

### SAFETY



» Free on-site safety and occupational health consultation for your business
» Free personal credit report
» Disaster and emergency preparedness resources
» Discounted alcohol safety training for your staff and servers
» Youth resources for concussion training, waivers of liability, recognizing the signs and symptoms of child abuse and more



# 24/7 CLAIM REPORTING

In our continuing effort to provide you with excellent claim service, you may now report a claim and get claim assistance 24 hours a day/7 days a week.

**For claim reporting, call toll free 1-888-875-5231 or visit USLI.COM and select the "report a claim" option.**

For emergency claims requiring immediate assistance, please use the toll free option. Your call will be referred to a claims professional who will respond within an hour of your call with direction and assistance.

Thank you for placing your trust in our company. We pledge to work hard every day to earn and maintain that trust.



**USLI.COM**
**888-523-5545**

CRF 12/16

# FREE PRIVACY BREACH RISK MANAGEMENT RESOURCES



**When a privacy breach occurs, will you be prepared?**

In 2015, according to the Identity Theft Resource Center, more than 783 breaches were reported and more than 675 million records were exposed. The eRisk Hub® portal, powered by NetDiligence®, is an effective way to combat privacy breaches and other types of cyber losses.

**With your USLI policy, you will receive instructions on how to access the eRisk Hub® portal and begin using this benefit that is valued in excess of $1,200 a year!**

eRisk Hub® is the one-stop shop you need to become educated and prepared for a privacy breach. This FREE service is available to USLI policyholders.

Using proprietary tools anchored in proven risk management principals, NetDiligence® provides a full range of enterprise-level information security, e-risk insurability and regulatory compliance assessment and testing services. NetDiligence® supports and is endorsed by some of the world's largest network liability insurance underwriters.

**HOW TO START USING THIS FREE OFFERING:**
- Go to eriskhub.com/usli
- Click "Register Now" to set up a free account
- Create your own username and password; your access code is **08451**

## Key Features of the eRisk Hub® Portal



**Data Breach Calculators** – Learn how to estimate the cost of a breach, notification costs and business interruption



**Learning Center** – Best practices articles, white papers and webinars from leading technical and legal experts. Highlighted topics include PCI compliance and social engineering



**Security Training** – Watch videos for best practices in security and privacy awareness or download a training guide



**Risk Manager Tools** – Assists you in managing your cyber risk, including a self-assessment, a sample website privacy policy and a tool for HIPAA compliance



**eRisk Resources** – A directory to quickly find external resources with expertise in pre and post-breach disciplines



**Consultation** – Breach Coach, HIPAA Coach and Security Coach available to assist you

eRisk_NR_BOUND 3/16

**This page has been intentionally left blank.**

# United States Liability Insurance Company

1190 Devon Park Drive, Wayne, Pennsylvania 19087
A Member Company of United States Liability Insurance Group

New
Renewal of Number

POLICY DECLARATIONS

No. CAP1562281

PARENT ORGANIZATION AND PRINCIPAL ADDRESS:

FORD CITY CONDO ASSOCIATION
4300 W FORD CITY DR UNIT A105
CHICAGO, IL 60652

POLICY PERIOD: (MO. DAY YR.)  From:  07/11/2019  To:  07/11/2020

12:01 A.M. STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE

BUSINESS DESCRIPTION:  Community Association

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

|  | PREMIUM |
|---|---|
| Directors And Officers Liability Coverage Part | $2,984.00 |
| TOTAL: | $2,984.00 |

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue

## See Endorsement EOD (1/95)

Agent:  AMWINS BROKERAGE OF THE MIDWEST, LLC (2101)
10 S. LaSalle Street, Suite 2000
Chicago, IL 60603

Issued:  07/15/2019 10:15 AM

Broker:  Mid-America Risk
10661 S Roberts Rd #104
Palos Hills, IL 60465

By: _____
Authorized Representative

UPD (08-07)

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Policy No. CAP1562281

Effective Date:   07/11/2019

12:01 AM STANDARD TIME

FORMS AND ENDORSEMENTS

The following forms apply to the Directors And Officers Liability coverage part

| Endt# | Revised | Description of Endorsements |
|---|---|---|
| CAP | 08/15 | Community Association Directors & Officers Liability Coverage Form |
| CAP APP | 08/15 | Community Association Directors and Officers Application - All States |
| CAP IL | 03/18 | Illinois State Amendatory Endorsement |
| CAP Jacket | 08/15 | Community Association Directors & Officers Liability Insurance Policy |
| CAP-235 | 08/15 | Data Breach & Identity Theft Endorsement |
| CAP-238 | 08/17 | Amend Definition of Organization |

# DIRECTORS & OFFICERS LIABILITY COVERAGE PART DECLARATIONS

PLEASE READ YOUR POLICY CAREFULLY.

THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE.  DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.

No.  CAP1562281

Effective Date:  07/11/2019
12:01 AM STANDARD TIME

ITEM I. PARENT ORGANIZATION AND PRINCIPAL ADDRESS

FORD CITY CONDO ASSOCIATION
4300 W FORD CITY DR UNIT A105
CHICAGO, IL 60652

ITEM II. POLICY PERIOD: (MM/DD/YYYY)  From:   07/11/2019  To:  07/11/2020

## Community Association Directors & Officers Liability - D&O/EPL

| ITEM III. LIMITS OF LIABILITY | $1,000,000 | EACH CLAIM |
| | $1,000,000 | IN THE AGGREGATE |
| ITEM IV. RETENTION: | $1,000 | EACH CLAIM |
| ITEM V. PREMIUM: | $2,984 | |

ITEM VI. Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
    See Endorsement EOD (01/95)

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

This page has been intentionally left blank.

USLI    USLI.COM
UNITED STATES LIABILITY INSURANCE    888-523-5545
A BERKSHIRE HATHAWAY COMPANY    United States Liability Insurance Company

# Community Association Directors & Officers Liability Application

This application is for a Claims Made policy.
Applicant may qualify for an INSTANT QUOTE by completing Section I below. Section II answers will be required prior to binding and are subject to underwriting approval.

## I. INSTANT QUOTE INFORMATION

Instant Quote is not available for accounts with losses in the past 5 years. If there is a loss history, please complete Section I. and submit details in a claim supplement

Applicant's Name: FORD CITY CONDOMINIUM ASSOCIATION

Location Address:  4300 W. Ford City Dr #105A

☑ Same as mailing address or complete section III.

City:  Chicago          State:  IL          Zip: 60652

Email Address of primary contact:  FCCA 4300@GMail.Com

Type of Association:

☑ Residential Condo   ☐ Homeowner   ☐ Office/Industrial Park   ☐ Cooperative   ☐ Retail   ☐ Master
☐ Mobile Home Park   ☐ Planned Unit Development   ☐ Property Owner   ☐ Condo-Hotel   ☐ Timeshare   ☐ Townhome

Total number of units when construction is complete:  328          Number of employees:  0

Does the association have retail occupancy?

If "Yes", what percentage of units are retail? 0     % Square footage of largest retail establishment?  3500   ☐Yes ☐No

Percentage of the total anticipated units sold:  100   %

If applicant is a residential association, what is the average unit value:  20,000

## II. DIRECTORS & OFFICERS UNDERWRITING INFORMATION

1. Does the builder/developer maintain representation on the board?
   If "Yes", has control of the board been turned over to the association?          ☐Yes ☑No / ☐Yes ☑No

2. Are any units rented or leased by the Association or by individual unit owners?     ☒Yes ☐No
   If "Yes", what percentage of units are rented or leased?  40  %
   Are any units short-term or vacation rentals?          ☐Yes ☐No

3. Does the association own, maintain or have an affiliation with:
   (a) A golf course, or country club          ☐Yes ☑No
       if "Yes", does the golf/country club have a separate board or is it separately managed?   ☐Yes ☑No
   (b) Water treatment facility?          ☐Yes ☑No
   (c) Airport/airstrip or sewage treatment facility?          ☐Yes ☑No

4. Does the association have a negative fund balance?          ☐Yes ☑No

5. Expiring Insurance Information: Carrier _____ Limits _____ Retention _____ Premium _____

   **(Attach a statement of details for all "yes" answers to the following questions)**

6. Does any one person/entity own multiple units?          ☑Yes ☐No
   If "Yes", what is the greatest percentage of units owned by one person/entity?  10  %

7. Within the last 24 months have any of the following occurred:
   a) Has the association completed a foreclosure sale against an owner?          ☐Yes ☑No
   b) Have there been any challenges to board elections, covenants or by-laws?          ☐Yes ☑No
   c) Has the board initiated litigation for reasons other than collection of dues or fees?          ☐Yes ☑No

8. a) Within the last five years, has any inquiry, complaint, notice of hearing, claim or suit been made against
      the applicant, or any person proposed for Insurance in the capacity of Director, Officer, Trustee,
      Employee, or Volunteer of the applicant?  **If "Yes" complete USLI Claim Supplement for each claim**          ☐Yes ☑No

   b) Is any person(s) proposed for this insurance aware of any fact, circumstance or situation which may
      result in a claim against applicant or any of its Directors, Officers, Trustees, Employees, or
      Volunteers?          **If "Yes" complete USLI Claim Supplement for each claim**          ☐Yes ☑No

9. Has any Policy for Directors and Officers or Employment Practices Liability ever been cancelled or
   non-renewed?    **(Do not answer if applicant is located in Missouri)**          ☐Yes ☑No



UNITED STATES LIABILITY INSURANCE GROUP
A BERKSHIRE HATHAWAY COMPANY

USLI.COM
888-523-5545
United States Liability Insurance Company

## III. OPTIONAL CRIME COVERAGE UNDERWRITING INFORMATION (For consideration of a separate loss sustained policy)

**Organization Background**

10. Has the association been in operation for more than two years?   ☑ Yes   ☐ No

11. Are there sources of income other than dues, assessments and investments? If Yes, please explain.   ☐ Yes   ☑ No

_____

**Insurance Information**

12. Does the organization have Crime Coverage?   ☐ Yes   ☐ No

Carrier Name _____ Policy Period _____ Limits Carried _____

First year of continuous coverage _____ Premium _____ Deductible _____

13. Does the association have a property manager?

If Yes, does the property manager carry Insurance for Employee Theft?   ☐ Yes   ☑ No

If No, does the association segregate duties so no one person has access to or processes an entire transaction?   ☐ Yes   ☐ No

☑ Yes   ☐ No

**Organization Operation Details**

14. Does the association have an annual financial statement prepared?   ☑ Yes   ☐ No

15. Is the association's bank account(s) reconciled by someone other than the person also authorized to withdraw, deposit or transfer funds? (e.g. quarterly, semi-annually, annually)   ☑ Yes   ☐ No

16. Do checks written by the association require a countersignature?   ☑ Yes   ☐ No

In excess of $ _____

**Claim Information**

17. Within the past five years, have there been any incidents, occurrences or claims for theft, embezzlement, larceny, robbery, unlawful taking or other forms of dishonesty involving the proposed Named Insured or any person proposed for this insurance? If Yes, please advise by separate attachment   ☐ Yes   ☑ No

18. Is any person proposed for this Insurance aware of any fact, circumstance, or situation that may give rise to a claim by other forms of dishonesty involving the proposed Named Insured or any person proposed for this insurance? If Yes, please provide full details by separate attachment   ☐ Yes   ☑ No

## IV. ADDITIONAL APPLICANT INFORMATION

Applicant's Mailing Address: 4300 W. Ford City Dr ~~Suite A~~ *UNIT A105*

City: Chicago                    State: IL                    Zip: 60652



UNITED STATES LIABILITY INSURANCE GROUP
A BERKSHIRE HATHAWAY COMPANY

USLI.COM
888-523-5545
United States Liability Insurance Company

**Florida & Illinois Notice:** I understand that there is no coverage for punitive damages assessed directly against an insured under Florida and Illinois law. However, I also understand that punitive damages that are not assessed directly against an insured, also known as "vicariously assessed punitive damages", are insurable under Florida and Illinois law. Therefore, if any Policy is issued to the Applicant as a result of this Application and such Policy provides coverage for punitive damages, I understand and acknowledge that the coverage for Claims brought in the State of Florida and Illinois is limited to "vicariously assessed punitive damages" and that there is no coverage for directly assessed punitive damages.

Retail Agency Name:  Mid- America Risk                     License #: __100 325919__

Main Agency Phone Number:  __708-974-9900__

Agency Mailing Address:  __10661 S Roberts Rd  #104__

City:  __Palos Hills__                     State: __Il__                     Zip: __60465__

The signer of this application acknowledges and understands that the information provided in this Application is material to the Insurer's decision to provide the requested insurance and is relied on by the Insurer in providing such insurance. The signer of this application represents that the information provided in this Application is true and correct in all matters. The signer of this Application further represents that any changes in matters inquired about in this Application occurring prior to the effective date of coverage, which render the information provided herein untrue, incorrect or inaccurate in any way will be reported to the Insurer immediately in writing. The Insurer reserves the right to modify or withdraw any quote or binder issued if such changes are material to the insurability or premium charged, based on the Insurer's underwriting guides. The Insurer is hereby authorized, but not required, to make any investigation and inquiry in connection with the information, statements and disclosures provided in this Application. The decision of the Insurer not to make or to limit any investigation or inquiry shall not be deemed a waiver of any rights by the Insurer and shall not estop the Insurer from relying on any statement in this Application in the event the Policy is issued. It is agreed that this Application shall be the basis of the contract should a policy be issued and it will be attached and become a part of the Policy.

Applicant's Signature: _____     Title: __Treasurer__     Date: __07.10.19__
                        Officer of the Board or Property Manager

Contact Info - Frank Corillo   Office # 773-581-7911

# Community Association Directors & Officers Liability Coverage Form

**NOTICE:** This is a Claims-Made Coverage Form. This Coverage Form only covers those **Claims** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if purchased. **Defense Costs** shall be applied against the Retention.

In consideration of the payment of the premium and reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** and all attachments and materials submitted therewith, and subject to all the provisions of this Policy, the **Company** agrees as follows:

## I. INSURING AGREEMENT

**A.** The **Company** will pay on behalf of the **Insured, Loss** in excess of the Retention not exceeding the Limit of Liability shown in the Policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for **Wrongful Acts** or **Wrongful Employment Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**. Such **Claim(s)** must be reported to the **Company** in accordance with Section XIII herein.

**B.** The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

## II. FULL PRIOR ACTS COVERAGE PROVISION

Coverage shall apply to any **Claim** made against the **Insured** for **Wrongful Acts** or **Wrongful Employment Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy, or the effective date of cancellation or non-renewal of this Policy provided that the **Claim** is first made during the **Policy Period**, or the Extended Reporting Period, if applicable. Such **Claim** must be reported to the **Company** in accordance with Section XIII herein.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act, Wrongful Employment Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

**A.** the inception date of this Policy; or

**B.** the inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

## III. DEFINITIONS

**A.** **"Application"** means:

**(1)** an application and any material submitted for this Policy; and

**(2)** an application(s) and any material submitted for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

The content of **(1)** and **(2)** above is incorporated by reference in this Policy as if physically attached hereto.

**B.** **"Claim"** means:

**(1)** any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act** or **Wrongful Employment Act**; or

**(2)** any written demand for monetary or non-monetary relief received by any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Act** or **Wrongful Employment Act**; or

**(3)** any judicial or administrative proceeding initiated against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Act** or **Wrongful Employment Act**, including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal therefrom.

**(4)** any written request to toll the statute of limitations relating to a potential **Claim** involving an alleged **Wrongful Act** or **Wrongful Employment Act.**

A **Claim** shall be considered first made when an **Insured** or its legal representative or agent first receives notice of a **Claim**.

**C.** **"Company"** means the insurer identified in the Policy Declarations.

**D.** **"Construction Defect(s)"** means any actual or alleged defective, faulty, or delayed construction or any other matter constituting a construction defect under applicable law, regardless of

whether it results from:

**(1)** defective or incorrect architectural plans or other designs;

**(2)** defective or improper soil testing;

**(3)** defective, inadequate or insufficient protection from subsoil or earth movement or subsidence;

**(4)** construction, manufacture or assembly of any tangible property;

**(5)** the failure to provide or pay for any construction-related goods or services; or

**(6)** the supervision or management of any construction-related activities.

**E.** **"Defense Costs"** means reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend any **Insured**, resulting from the investigation, adjustment, defense and appeal of a **Claim**. **Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of any **Insured**.

**F.** **"Discrimination"** means:

**(1)** the termination of an employment relationship; or

**(2)** a demotion or failure to hire or promote any individual; or

**(3)** any other limitation or classification of an **Employee** or applicant for employment which would deprive any individual of employment opportunities or adversely affect any individual's status as an **Employee**;

because of race, color, religion, age, sex, disability, pregnancy, national origin, marital status, sexual orientation or other protected class or characteristic established under applicable federal, state or local statute ordinance, regulation or order.

**G.** "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

**H.** **"Employee"** means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, volunteers and interns.  An **Employee's** status as an **Insured** will be determined as of the date of the **Wrongful Act** or **Wrongful Employment Act** that results in the

**Claim**.

**I.** **"Harassment"** means:

**(1)** sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance; or

**(2)** other harassment which creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance.

**J.** **"Individual Insureds"** means any persons who were, now are, or shall be directors, trustees, officers, **Employees**, volunteers or committee members of the **Organization**, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

**K.** **"Insured(s)"** means the **Organization** and the **Individual Insureds**.

**L.** **"Loss"** means damages and settlements which an **Insured** is legally obligated to pay as a result of a **Wrongful Act** or **Wrongful Employment Act**, front pay and back pay, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award or an express obligation to make payments in the event of the termination of employment.

For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

**M.** **"Organic Pathogen"** means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.

**N.** **"Organization"** means:

**(1)** the **Parent Organization**; and

**(2)** any **Subsidiary** of the **Parent Organization**; and

**(3)** any entity in its capacity while performing duties on behalf of the **Insured**, receiver, bankruptcy trustee, or debtor in possession of **(1)** or **(2)** above under the United States

bankruptcy law or equivalent status under the law of any other jurisdiction.

**O.** **"Parent Organization"** means the entity named in Item I. of the Policy Declarations.

**P.** **"Policy Period"** means the period from the effective date of this Policy set forth in the Policy Declarations to the expiration date or the effective date of cancellation or non-renewal date, if any.

**Q.** **Property Manager** means any entity providing real estate property management services for a fee to the **Organization** pursuant to a written contract, but only in its capacity as a **Property Manager** for the **Organization** as described in the written contract between the **Organization** and **Property Manager.**

**R.** **"Retaliation"** means any actual or alleged retaliatory treatment against an **Employee** because of:

**(1)** the exercise of or attempt to exercise an **Employee's** rights under law; or

**(2)** an **Employee's** disclosure of or threat to disclose to a governmental agency or superior, acts of actual or alleged wrongdoing by any **Insured**; or

**(3)** the filing of any claim under any federal, state or local "whistle-blower" law including the Federal False Claims Act; or

**(4)** **Employee** strikes or slowdowns.

**S.** **"Subsidiary"** means, for the purpose of this Policy, any entity which is more than 50% owned by the **Parent Organization** as of the effective date of this Policy and is disclosed as a subsidiary in an **Application** to the **Company.**

A non profit entity formed or acquired after the effective date of this Policy is, for the purpose of this Policy, a **Subsidiary** if:

**(1)** its assets total less than 25% of the total consolidated assets of the **Parent Organization** at the time of formation or acquisition; and

**(2)** the formation or acquisition with full particulars about the new **Subsidiary** has been disclosed to the **Company** by the **Parent Organization** as soon as practicable but no later than the expiration date of this Policy, or effective date of cancellation or non-renewal, if any.

Any non profit entity formed or acquired after the effective date of this Policy whose assets total more than 25% of the total consolidated assets of the **Parent Organization** or any for profit entity formed or acquired after the effective date of this Policy is, for the purpose of this Policy, a

**Subsidiary** only if:

**(1)** the **Parent Organization** provides written notice to the **Company** of such **Subsidiary** as soon as practicable, but within sixty (60) days of the formation or acquisition of the **Subsidiary**; and

**(2)** the **Parent Organization** provides the **Company** with such information as the **Company** may deem necessary to determine the insurability of the **Subsidiary**; and

**(3)** the **Parent Organization** accepts any special terms, conditions, exclusions, limitations or premium imposed by the **Company**; and

**(4)** the **Company**, at its sole discretion, agrees to insure the **Subsidiary**.

A **Subsidiary** which is sold or dissolved:

**(1)** after the effective date of this Policy and which was an **Insured** under this Policy; or

**(2)** prior to the effective date of this Policy and which was an **Insured** under a prior Policy issued by the **Company**;

shall continue to be an **Insured**, but only with respect to **Claims** first made during this **Policy Period** or Extended Reporting Period, if applicable, arising out of **Wrongful Acts** or **Wrongful Employment Acts** committed or allegedly committed during the time that the entity was a **Subsidiary** of the **Parent Organization**.

**T.** **"Third Party"** means any person(s) with whom an **Insured** in their capacity as such interacts while the **Insured** is performing duties related to the conduct of the **Organization's** business.

**U.** **"Third Party Discrimination"** means discrimination by an **Insured** in their capacity as such against a **Third Party** based upon such **Third Party's** race, religion, age, sex, disability, national origin, sexual orientation or other protected class or characteristic established under applicable federal, state or local statute or ordinance while the **Insured** is performing duties related to the conduct of the **Organization's** business.

**V.** **"Third Party Harassment"** means

**(1)** sexual harassment including any unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature against a **Third Party**; or

**(2)** other harassment which creates an environment that is hostile, intimidating or offensive to a **Third Party;**

committed or allegedly committed by an **Insured** in their capacity as such while the **Insured** is performing duties related to the conduct of the **Organization's** business.

**W.** **"Wrongful Act"** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties:

**(1)** by the **Organization; or**

**(2)** by the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization; or**

**(3)** asserted against any **Individual Insured** because of an actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by the **Organization.**

Wrongful Act shall also include any actual or alleged act of:

**(1)** **Third Party Discrimination; or**

**(2)** **Third Party Harassment.**

It is further agreed that the same **Wrongful Act**, and interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act.**

**X.** "**Workplace Tort**" means any actual or alleged employment related:

**(1)** misrepresentation; or

**(2)** negligent supervision, training or evaluation; or

**(3)** wrongful discipline; or

**(4)** wrongful deprivation of a career opportunity; or

**(5)** failure to enforce written policies and procedures relating to a **Wrongful Employment Act.**

**Y.** **"Wrongful Employment Act"** means any actual or alleged act of:

**(1)** **Discrimination**; or

**(2)** **Harassment**; or

**(3)** **Retaliation;** or

**(4)** **Wrongful Termination**; or

**(5)** **Workplace Tort**; or

**(6)** negligent violation of the Uniformed Services Employment & Reemployment Rights Act; or

**(7)** negligent violation of the Family and Medical Leave Act of 1993; or

**(8)** negligent violation of state law having the same or substantially similar purpose as the acts in **(6)** or **(7)** above; or

**(9)** acts described in clauses **(1)** through **(8)** above arising from the use of the **Organization's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** Internet, e-mail, telecommunication or similar systems;

committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization** or asserted by any **Employee**, former **Employee** or applicant for employment with the **Organization** against an **Individual Insured** because of his/her status as such.

It is further agreed that the same **Wrongful Employment Act** and interrelated series of **Wrongful Employment Acts** or a series of similar or related **Wrongful Employment Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Employment Act** and to have commenced at the time of the earliest **Wrongful Employment Act.**

**Z.** **"Wrongful Termination"** means the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any **Employee** in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment.

## IV. EXCLUSIONS

**A.** The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** (except where otherwise noted) in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

**(1)** any actual or alleged bodily injury, sickness, humiliation, mental anguish, emotional distress, invasion of privacy, assault, battery, disease or death of any person, or theft, conversion, misappropriation, loss of use or view, damage, destruction, or deterioration of any property including any loss of use or slander of title; provided that this exclusion shall not apply to:

**a.** **Claims** for defamation that result from a **Wrongful Act**. However, coverage afforded for defamation shall only be excess over the **Insured's** primary General Liability Policy. Excess coverage under this Policy shall follow

the form of said General Liability Policy. Failure to maintain a General Liability Policy shall not create primary coverage under this Policy; or

**b.** **Claims** for mental anguish, emotional distress, invasion of privacy, or humiliation, libel, slander or defamation that result from a **Wrongful Employment Act**; or

**(2)** conduct of the **Insured** or at the **Insured's** direction that is fraudulent, dishonest, criminal or with the intent to cause damage provided that this exclusion will not apply to **Defense Costs** incurred until such conduct is established to be fraudulent, dishonest or criminal by final and non-appealable judgment or adjudication; or

**(3)** any of the **Insureds** gaining any profit, remuneration or advantage to which the **Insured** was not legally entitled provided however this exclusion shall not apply to **Defense Costs** incurred until a final and non-appealable judgment or adjudication is rendered against the **Insured** as to this conduct; or

**(4)** the actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, noise, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, whether or not such actual, alleged or threatened discharge, dispersal, release or escape is sudden, accidental or gradual in nature, or any cost or expense arising out of any request, demand, or order that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants; or

**(5)** any form of **Organic Pathogen** including the actual, alleged or threatened existence, discharge, dispersal, release or escape of **Organic Pathogens** including water damage that results or is alleged to result in the existence of **Organic Pathogens**, whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental, intentional or gradual in nature or whether or not any resulting injury, damage, devaluation of property, cost or expense is expected or intended from the standpoint of the **Insured**. There will be no coverage for the **Insured's** failure or alleged failure to discover or disclose the existence of **Organic Pathogens** from any source whatsoever or water damage that results or is alleged to

result in the existence of **Organic Pathogens**. In addition, this insurance does not cover fines and penalties arising out of any governmental direction, or any request of any private party or citizen action that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Organic Pathogens** or any **Claim** for the taking, use, acquisition or interference with rights of others in property or air space; or

**(6)** any radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, source material, "special nuclear material" and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions by any federal, state or local statutory or common law; or

**(7)** any pension, profit sharing, welfare benefit or other employee benefit program established in whole or part for the benefit of any **Individual Insured**, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (except Section 510 thereof) or any amendments thereof or regulations promulgated thereunder or similar provisions of any federal, state or local statutory law or common law provided that this exclusion will not apply to any **Claim** for actual or alleged **Retaliation** with regards to benefits paid or payable; or

**(8)** any **Claim** by, at the behest of, or on behalf of the **Organization** and/or any **Individual Insured**; provided that this Exclusion shall not apply to:

**a.** any derivative action on behalf of, or in the name or right of the **Organization**, if such action is brought and maintained totally independent of, and without the solicitation, assistance, participation or intervention of any of the **Insureds**; or

**b.** a **Claim** that is brought and maintained by or on behalf of any **Individual Insured** for contribution or indemnity which is part of or results directly from a **Claim** which is otherwise covered by the terms of this Policy; or

**c.** a **Claim** brought by any **Individual Insured** for a **Wrongful Employment Act**; or

**d.** a **Claim** that is brought and maintained by or on behalf of any former director, trustee, officer, volunteer or committee member, but only if such **Claim** does not arise out of, directly or indirectly result from, is in consequence of, or in any way

involves any **Wrongful Act**, **Wrongful Employment Act**, responsibilities, actions, or failure to act by the **Insured** during such former director, trustee, officer, volunteer or committee member's tenure of service to the **Insured**.

(9) any **Claim** made by or against any builder, developer, or sponsor in their capacity as such; or

(10) any actual or alleged liability of any **Insured**, in whole or in part, including but not limited to actions for contribution or indemnity, related to or for any **Construction Defect(s)**; or

(11) any pending or prior litigation, administrative or regulatory proceeding, **Claim**, demand, arbitration, decree, or judgment of which an **Insured** had written notice before the effective date of this Policy; or any fact, circumstance, event, situation, **Wrongful Act** or **Wrongful Employment Act** which before the effective date of this Policy was the subject of any notice under any other similar Policy of insurance to the **Insured**; or any future **Claims** or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts, actual or alleged;

provided that, if this Policy is a renewal of a Policy or Policies previously issued by the **Company** and if the coverage provided by the **Company** was continuous from the effective date of the first such other policy to the effective date of this Policy, the reference in this exclusion to "effective date" will mean the effective date of the first Policy under which the **Company** first provided continuous coverage to an **Insured**; or

(12) any **Claim** against any **Subsidiary** or its **Individual Insureds** for any **Wrongful Act** or **Wrongful Employment Act** occurring prior to the date that such entity became a **Subsidiary**, or any **Wrongful Act** or **Wrongful Employment Act** occurring at any time that such entity is not a **Subsidiary**; or

(13) any obligation under a worker's compensation, disability benefits, insurance benefits or unemployment compensation law, or any similar law or regulation; provided this exclusion will not apply to any **Claim** for actual or alleged **Retaliation** with regards to benefits paid or payable; or

(14) any lockout, strike, picket line, replacement of worker(s) or other similar actions resulting from labor disputes or labor negotiations; provided that this exclusion will not apply to a **Claim** for actual or alleged **Retaliation** from the foregoing; or

(15) the National Labor Relations Act, Labor Management Relations Act and amendments thereto, or any similar state, federal, or local law or regulation provided that this exclusion will not apply to a **Claim** for actual or alleged **Retaliation** arising from an **Insured's** alleged violation of such law; or

(16) actual or alleged violations of the Fair Labor Standards Act, any amendments thereto, or any similar provisions of any federal, state or local law (except the Equal Pay Act); or

    a. improper wages or wage disputes due to misclassification of **Employees** as exempt or non-exempt; or

    b. misrepresentation involving any **Employee's** status as exempt or non-exempt; provided that this exclusion shall not apply to any **Claim** for actual or alleged **Retaliation** arising from the foregoing; or

**B.** The **Company** shall be liable to make payment for **Defense Costs** but not **Loss** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

(1) breach of any oral, written or implied contract or agreement by any **Insured**, or any liability of others assumed by any **Insured** under any oral, written or implied contract or agreement; or

(2) any costs or actual or alleged liability resulting from the modification of any real or personal property in order to make said real or personal property more accessible or accommodating to any disabled person. **Defense Costs** associated with such **Claim** shall be a part of and not in addition to the Limit of Liability stated in Item III. of the Policy Declarations; or

(3) the **Insured's** actual or alleged liability for damages under any express employment contract or express employment agreement; provided that this exclusion shall not apply to liability for a **Wrongful Employment Act** which the **Insured** would have in the absence of such contract or agreement.

No **Wrongful Act** or **Wrongful Employment Act** of any **Individual Insured** or any fact pertaining to any **Insured** shall be imputed to any other **Individual Insured** for purposes of determining the applicability of Exclusions **A (2).** and **A(3).**

## V. LIMITS OF LIABILITY AND RETENTION

Regardless of the number of **Insureds** under this Policy, **Claim(s)** made or brought on account of **Wrongful Act(s)**, **Wrongful Employment Act(s)** or otherwise, the **Company's** liability is limited as follows:

**A.** The Limit of Liability specified in the Policy Declarations as "in the aggregate" shall be the maximum liability for **Loss** from all **Claims**;

**B.** The Limit of Liability specified in the Policy Declarations as the Limit for each **Claim** shall be the maximum liability for **Loss** for each **Claim**;

**C.** **Defense Costs** shall be in addition to the Limit of Liability as shown in the Policy Declarations;

**D.** Subject to the Limits of Liability provisions stated in **A.**, **B.**, and **C.** above, the **Company** shall be liable to pay only **Defense Costs** and **Loss** in excess of the Retention specified in the Policy Declarations hereof as respects each and every **Claim**;

**E.** The **Company** shall have no obligation to pay any part or all of the Retention specified in the Policy Declarations for any **Claim** on behalf of an **Insured**. If the **Company**, at its sole discretion, elects to pay any part or all of the Retention, the **Insureds** agree to repay such amounts to the **Company** upon demand;

**F.** The Retention shall not apply to **Loss** or **Defense Costs** paid on behalf of an **Individual Insured** for a **Wrongful Act** when the **Organization** has not indemnified an **Individual Insured** for such **Loss** or **Defense Costs** subject to the terms and conditions of Section VIII. INDEMNIFICATION/ WAIVER OF RETENTION;

**G.** The Limit of Liability for the Extended Reporting Period, if applicable, shall be a part of and not in addition to the limit specified in the Policy Declarations;

**H.** **Claims** based upon or arising out of the same **Wrongful Act(s)** or **Wrongful Employment Act(s)**, interrelated **Wrongful Act(s)** or **Wrongful Employment Act(s)**, or a series of similar or related **Wrongful Act(s)** or **Wrongful Employment Act(s)** shall be considered a single **Claim** and shall be considered first made during the **Policy Period** or Extended Reporting Period, if applicable, in which the earliest **Claim** arising out of such **Wrongful Act(s)** or **Wrongful Employment Act(s)** was first made and all **Loss** for such **Claims** shall be subject to the one Limit of Liability that applies to such earliest **Claim**;

**I.** The Limit of Liability for this Policy shall apply separately to each consecutive annual period starting with the beginning of the **Policy Period** shown in the Policy Declarations. If this Policy is issued for a period of more than twelve (12) months but less than twenty-four (24) months or if the **Policy Period** is extended after issuance, the Extended Reporting Period will be deemed part of the last **Policy Period** for the purposes of determining the Limit of Liability.

## VI. LIFETIME OCCURRENCE REPORTING PROVISION

If the **Parent Organization** shall cancel or non-renew this Policy for a reason other than being sold, acquired or bankrupt, each director, officer, trustee, or committee member who did not serve as such at the time of the cancellation or non-renewal, shall be provided an unlimited extension of time to report any **Claim**(s) first made against such person after the effective date of such cancellation or non-renewal.

However, this extension of time to report **Claim**(s) shall only be afforded in the event that:

**(1)** the **Wrongful Act** was committed before the date of cancellation or non-renewal; and

**(2)** the person was a director, trustee, officer, or committee member during the **Policy Period** of a Policy issued by the **Company,** provided the **Company** has written continuous coverage for the **Parent Organization** from the effective date of the first Policy issued by the Company to the date of cancellation or non-renewal of this Policy; and

**(3)** no Directors and Officers Liability policy, or policy providing essentially the same type of coverage, or Extended Reporting Period, is in effect at the time the **Claim** is made.

## VII. EXTENDED REPORTING PERIOD

**A.** If the Policy expires, is cancelled or non-renewed for any reason other than non payment of premium, the **Parent Organization** shall have the right to purchase an Extended Reporting Period to report to the **Company** as soon as practicable during the Extended Reporting Period any **Claim(s)** first made against the **Insured** during the twelve (12) months, or twenty-four (24) months or thirty-six (36) months after the effective date of such expiration, cancellation or non-renewal (depending upon the Extended Reporting Period purchased). An Extended Reporting Period shall only apply to a **Claim** arising from a **Wrongful Act** or **Wrongful Employment Act** committed before the date of the Policy expiration, cancellation or non-renewal. For the purpose of this clause, any change in premium terms or terms on renewal shall not constitute a refusal to renew.

**B.** The additional premium for the Extended Reporting Period shall be thirty percent (30%) of

the annual premium set forth in the Policy Declarations for the twelve (12) month period, seventy-five percent (75%) of the annual premium set forth in the Policy Declarations for the twenty-four (24) month period, and one hundred twenty percent (120%) of the annual premium set forth in the Policy Declarations for the thirty-six (36) month period. The Extended Reporting Period begins on the expiration date or the effective date of cancellation or non-renewal of the Policy. The **Parent Organization** must notify the **Company** in writing and must pay the additional premium due no later than thirty (30) days after the effective date of such expiration, cancellation or non-renewal.

**C.** All premium paid with respect to an Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period.

**D.** The Limits of Liability available during the Extended Reporting Period shall not exceed the balance of the Limits of Liability available on the expiration date or effective date of the cancellation or non-renewal of the Policy.

**E.** Coverage for **Claim(s)** first received and reported during the Extended Reporting Period shall be in excess over any other valid and collectible insurance providing coverage for such **Claim(s)**.

# VIII. INDEMNIFICATION / WAIVER OF RETENTION

Regardless of whether **Loss** and **Defense Costs** resulting from any **Claim** against an **Individual Insured** is actually indemnified by the **Organization**, the Retention set forth in the Policy Declarations shall apply to any **Loss** and **Defense Costs** if indemnification of the **Individual Insured** by the **Organization** is legally permissible. The certificate of incorporation, charter, articles of association or other organizational documents of the **Organization**, including bylaws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Individual Insured** to the fullest extent permitted by law.

However, if an **Individual Insured** is not indemnified for **Loss** and **Defense Costs** solely by reason of the **Organization's** financial insolvency or because indemnification is not legally permissible, the **Individual Insured's** Retention as stated on the Policy Declarations shall be amended to $0. This change in Retention shall not affect any other terms or conditions of this Policy.

# IX. PROPERTY MANAGEMENT EXTENSION

Any person or entity acting as a **Property Manager** under a written contract with the **Organization** shall be an additional insured under this Policy but only for **Claims** arising out of **Wrongful Act(s)** or **Wrongful Employment Act(s)** committed while the **Property**

**Manager** is acting within the scope of his/her/its duties on behalf of an **Insured**.

However, there shall be no coverage afforded for:

(1) any **Claim** by any person or entity arising out of or resulting from the rendering or failure to render property management services; or

(2) any **Claim** brought against any **Property Manager** or by or on behalf of any former, current, or future:

a. **Property Manager** or management company; or

b. **Employee** or applicant for employment thereof.

# X. SPOUSAL AND DOMESTIC PARTNER EXTENSION

If a **Claim** against an **Individual Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Individual Insured** solely by reason of (1) such spousal or **Domestic Partner** status, or (2) such spouse's or **Domestic Partner's** ownership interest in property or assets that are sought as recovery for **Wrongful Act(s)** or **Wrongful Employment Act(s)**, any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which the **Individual Insured** becomes legally obligated to pay as a result of the **Claim**.

All definitions, exclusions, terms and conditions of this Policy, including the Retention, applicable to any **Claim** against or **Loss or Defense Costs** sustained by such **Individual Insured** shall also apply to this coverage extension.

The extension of coverage afforded by this Section X. shall not apply to the extent the **Claim** alleges any **Wrongful Act**, error, omission, misstatement, misleading statement or neglect or breach of duties committed by such spouse or **Domestic Partner** as long as they are not also an **Individual Insured**.

# XI. DEFENSE AND SETTLEMENT

The **Insured** shall not demand or agree to arbitration of any **Claim** without the written consent of the **Company**. The **Insured** shall not, except at personal cost, make any offer or payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense without the **Company's** written consent.

If a **Claim** is made against the **Insured** for **Loss** that is both covered and uncovered by this Policy, the **Company** will pay one hundred percent (100%) of **Defense Costs** for the **Claim** until such time that the Limits of Liability of this Policy are exhausted by payment of a covered **Loss** or the **Claim** for the covered **Loss** is resolved by settlement, verdict or summary judgment. The **Company**, as it deems expedient, has the right to investigate, adjust, defend,

appeal and, with the consent of the **Insured**, negotiate the settlement of any **Claim** whether within or above the Retention. If the **Insured** refuses to consent to a settlement recommended by the **Company**, the **Company's** obligation to the **Insured** for **Defense Costs** and **Loss** attributable to such **Claim(s)** shall be limited to:

**(1)** the amount of the covered **Loss** in excess of the Retention which the **Company** would have paid in settlement at the time the **Insured** first refused to settle;

**(2)** plus covered **Defense Costs** incurred up to the date the **Insured** first refused to settle;

**(3)** plus seventy-five percent (75%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

It is understood that payment of **(1)**, **(2)** and **(3)** above is the limit of the **Company's** liability under this Policy on any **Claim** in which the **Insured** fails or refuses to consent to the **Company's** settlement recommendation, subject at all times to the Limits of Liability and Retention provisions of the applicable coverage section. The remaining twenty-five percent (25%) of **Loss** and **Defense Costs** in excess of the amount referenced in **(1)** and **(2)** above shall be the obligation of the **Insured**.

The **Insured** agrees to cooperate with the **Company** on all **Claims**, and provide such assistance and information as the **Company** may reasonably request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required, and shall attend hearings, depositions, and trials, and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure for **Loss** or **Defense Costs**.

The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the execution of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** name, and shall provide all other assistance and cooperation which the **Company** may reasonably require.

## XII. ORDER OF PAYMENTS

In the event payment of **Loss** is due under this Policy

but the amount of such **Loss** exceeds the remaining available Limit of Liability specified in the Policy Declarations, the **Company** will to the extent of any remaining amount of the Limit of Liability available:

**A.** first pay such **Loss** on behalf of the **Individual Insured(s)** for which coverage is provided under Section I. Insuring Agreement; then

**B.** pay such **Loss** on behalf of the **Organization** for which coverage is provided under Section I. Insuring Agreement.

## XIII. NOTICE/ CLAIM AND CIRCUMSTANCE REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Company**. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

**A.** Written Notice of a **Claim**

**(1)** As a condition precedent to exercising any right to coverage under this Policy, an **Insured** shall give to the **Company** written notice of a **Claim** as soon as practicable, but:

**(a)** if the Policy expires, is cancelled or is non-renewed and if no Extended Reporting Period is purchased, no later than sixty (60) days after the expiration date or effective date of such cancellation or non-renewal. Coverage for a **Claim** reported to the **Company** during the sixty (60) day period after expiration, cancellation or non-renewal applies only if the **Claim** is first made against an **Insured** prior to the Policy expiration or effective date of cancellation or non-renewal;  or

**(b)** if the **Company** sends written notice to the **Parent Organization** stating that this Policy is being terminated for nonpayment of premium, the **Insured** shall give to the **Company** written notice of such **Claim** prior to the effective date of such termination.

**(c)** if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period;

provided that if the premium for the Extended Reporting Period is not paid in accordance with Section VII then no later than the date of termination for nonpayment.

**(2)** If an Extended Reporting Period is purchased, notice of **Claim** shall be in accordance with the terms and conditions of Section VII EXTENDED REPORTING PERIOD.

**B.** Written Notice of Circumstance:

**(1)** An **Insured** shall give to the **Company** written notice of a circumstance which could reasonably be expected to give rise to a **Claim** being made against an **Insured** as soon as practicable during the **Policy Period** in which an **Insured** first becomes aware of the circumstance.

**(2)** If written notice of a circumstance which could reasonably be expected to give rise to a **Claim** being made against an **Insured** has been given to the **Company** during the **Policy Period,** any **Claim** which is subsequently made against an **Insured** and reported to the **Company** alleging, arising out of, based upon, or attributable to the facts specifically alleged in the reported circumstance, shall be considered to have been first made at the time such notice of the circumstance was given to the **Company**. Coverage for a circumstance reported pursuant to this provision applies only if the **Wrongful Act or Wrongful Employment Act** that is the subject of the reported circumstance occurs prior to the expiration date or if applicable, prior to the effective date of cancellation or non-renewal of the **Policy Period** in which the circumstance was reported.

**(3)** Notice of a circumstance under Section 1., above shall include the specific facts of the actual or alleged **Wrongful Act** or **Wrongful Employment Act** including relevant dates and identities of the persons involved in sufficient detail to allow the **Company** to conduct an investigation.

## XIV. CANCELLATION OR NON-RENEWAL

**A.** This Policy may be cancelled by the **Parent Organization** by either surrender of the Policy thereof to the **Company** at its address stated in the Policy Declarations or by mailing to the **Company** written notice requesting cancellation and in either case stating when thereafter such cancellation shall be effective. If cancelled by the **Parent Organization**, the **Company** shall retain the customary short rate proportion of the premium.

**B.** The **Company** may cancel this Policy only in the event of the failure of the **Insured** to pay the premium when due by mailing to the **Parent Organization** written notice when, not less than ten (10) days thereafter, such cancellation shall be effective.

**C.** In the event the **Company** refuses to renew this Policy, the **Company** shall mail to the **Parent Organization**, not less than sixty (60) days prior to the end of the **Policy Period**, written notice of non-renewal. Such notice shall be binding on all **Insureds**.

**D.** The **Company** shall mail notice of cancellation or non-renewal by certificate of mailing stating the effective date of cancellation or non-renewal and

the specific reason(s) for cancellation or non-renewal, which shall become the end of the **Policy Period**. Mailing of such notice shall be sufficient notice of cancellation or non-renewal

**E.** If the Policy is cancelled by the **Company**, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

## XV. REPRESENTATIONS AND SEVERABILITY

**A.** The **Insureds** represent that the particulars and statements contained in the **Application** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and (3) the Policy is issued in reliance upon the truth of such representations.

**B.** An **Application** for coverage shall be construed as a separate **Application** for coverage by each **Individual Insured**. With respect to the particulars and statements contained in the **Application**, no fact pertaining to or knowledge possessed by any **Individual Insured** shall be imputed to any other **Individual Insured** for the purpose of determining if coverage is available. However, facts pertaining to and knowledge possessed by the individual(s) signing the **Application(s)** and the President, Chairperson, and Officers shall be imputed to the **Organization** for the purpose of determining if coverage is available.

## XVI. SUBROGATION

In the event of any payment under this Policy, the **Company** shall be subrogated to the **Insured's** right of recovery therefore against any person or entity and the **Insured** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall not do anything to prejudice such rights.

## XVII. CHANGES

Notice to any agent or knowledge by any agent shall not effect a waiver or change in any part of this Policy or stop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed except by an endorsement, issued by the **Company** to form a part of this Policy.

## XVIII. AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this Policy, the **Insured** agrees that

the **Parent Organization** shall act on behalf of all **Insureds** with respect to the giving and receiving of any return premiums that may become due under the Policy.  Notice to the **Parent Organization** shall be directed to the individual named in the **Application**, or such other person as shall be designated by the **Parent Organization** in writing, at the address of the **Parent Organization**.  Such notice shall be deemed to be notice to all **Insureds**.  The **Parent Organization** shall be the agent of all **Insureds** to effect changes in the Policy or purchase an Extended Reporting Period.

## XIX. ASSIGNMENT

Assignment of interest under this Policy shall not bind the **Company** unless its consent is endorsed hereon.

## XX. OTHER INSURANCE

This Policy shall be excess of other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this Policy.

## XXI. TERMS OF POLICY CONFORMED TO STATUTE

Terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

## XXII. CHANGES IN EXPOSURE

**A.** If after the Inception Date of this Policy:

  **(1)** the **Parent Organization** merges into or consolidates with another entity such that the **Parent Organization** is not the surviving entity; or

  **(2)** another entity, person or group of entities and/or persons acting in concert acquires more than fifty percent (50%) of the assets of the **Parent Organization**; or

  **(3)** another entity, person or group of entities and/or persons acting in concert acquires the right to elect or select a majority of the directors of the **Parent Organization**; or

  **(4)** the **Parent Organization** sells all or substantially all of its assets,

the above events referred to as a "Transaction,"

this Policy shall continue in full force and effect until the expiration date of the Policy, or the effective date of non-renewal if applicable with respect to **Wrongful Acts** or **Wrongful Employment Acts** occurring before the Transaction, but there shall be no coverage under this Policy for actual or alleged **Wrongful Acts** or **Wrongful Employment Acts** occurring on and after the Transaction.

**B.** The **Parent Organization** shall give the **Company** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

The entire premium for this Policy shall be deemed fully earned on the transaction date.  In the event of a Transaction, the **Parent Organization** shall have the right to an offer of coverage by the **Company** for an Extended Reporting Period to report **Wrongful Acts** or **Wrongful Employment Acts** occurring prior to the effective date of the transaction.

## XXIII.  ACTION AGAINST THE COMPANY

**A.** No action shall lie against the **Company** unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant or the claimant's legal representative and the **Company**.

**B.** Any person or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.  No person or entity shall have any right under this Policy to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Company** be impeded by the **Insured** or their legal representatives. Bankruptcy or insolvency of the **Insured** or their successors in interest shall not relieve the **Company** of its obligations hereunder.

## XXIV.  ACCEPTANCE

This Policy embodies all agreements existing between the parties hereunder or any of their agents relating to this insurance.

| This endorsement modifies insurance provided under the following:

**COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY
INSURANCE POLICY** |

## ILLINOIS STATE AMENDATORY ENDORSEMENT

To be attached to and form a part of all Community Association Directors & Officers Liability Insurance policies written in the state of Illinois.

It is hereby agreed that the following sections are amended and supersede any provision to the contrary:

Throughout this Policy the term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

III. DEFINITIONS, **A.** "**Application**", is deleted in its entirety and replaced with the following:

**A**. "**Application**" means:
(**1**) An application for this Policy and
(**2**) An application(s) for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

III. DEFINITIONS, **E.** "**Defense Costs**", is amended to include the following:

**Defense Costs** does not mean salaries of the employees, officers, or salaries of staff attorneys of the **Company** or **Parent Organization**.

III. DEFINITIONS is amended to include the following:

Wherever the term "spouse" is used, it will include a party who has entered into a civil union with an **Individual Insured** recognized under Illinois law.

III. DEFINITIONS, **L.** "**Loss**", is deleted in its entirety and replaced with the following:

**L.** "**Loss**" means damages and settlements, but does not include fines, penalties imposed by law, sanctions, taxes, the multiplied portion of any multiple damage award, and matters deemed uninsurable under the law pursuant to which this Policy shall be construed. This definition does not exclude punitive damages, which are only payable due to vicarious liability in the State of Illinois.

IV. EXCLUSIONS, **A.(4)**, is deleted in its entirety and replaced with the following:

(**4**) the actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, noise, waste materials, or

other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, whether or not such actual, alleged or threatened discharge, dispersal, release or escape is sudden, accidental or gradual in nature, or any cost or expense arising out of any request, demand, or order that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants.  This exclusion does not apply to damage caused by heat, smoke, or fumes from a hostile fire;

VII. EXTENDED REPORTING PERIOD, **A.**, is deleted in its entirety and replaced with the following:

**A.**  If the Policy expires, is cancelled or is non-renewed for any reason, the **Parent Organization** shall have the right to purchase an Extended Reporting Period to report any **Claims(s)** or circumstance(s) which could be expected to give rise to a **Claim** being first made against an **Insured** during the twelve (12) months, twenty-four (24) months or thirty-six (36) months after the expiration date or effective date of such cancellation or non-renewal (depending upon the Extended Reporting Period purchased).  An Extended Reporting Period shall only apply to a **Wrongful Act** or **Wrongful Employment Act** committed before the date of the Policy expiration, cancellation or non-renewal.

XIV. CANCELLATION OR NON-RENEWAL is amended to add the following:

Notices of cancellation and non-renewal will be mailed  to the **Insured,** and the  agent or broker of record at the last address known to the **Company** and any mortgagee or lienholder, if known.  Proof of mailing will be sufficient proof of notice.

XX. OTHER INSURANCE, is deleted and replaced with the following:

If the **Parent Organization** has insurance provided by other companies against a **Loss** covered by this Policy, the **Company** shall not be liable under this Policy for a greater proportion of such **Loss** and **Claims** expenses than the applicable Limit of Liability stated in the Policy Declarations bears to the total applicable Limit of Liability of all valid and collectible insurance against such **Loss**.

NOTHING HEREIN CONTAINED SHALL VARY, ALTER, WAIVE, OR EXTEND ANY OF THE TERM, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown.

# COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY INSURANCE POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

## COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY INSURANCE POLICY

# Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

This endorsement modifies insurance provided under the following:

## COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY INSURANCE POLICY

## Data Breach & Identity Theft Endorsement

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement. This endorsement is part of and subject to the provisions of the Policy to which it is attached.

I.  SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of Coverages and Limits of Liability provided by this endorsement.

| COVERAGE | LIMIT OF LIABILITY |
|---|---|
| A. Data Breach Expense | $50,000 each claim<br>$50,000 in the aggregate |
| B. Identity Theft Expense | $50,000 each claim<br>$50,000 in the aggregate |

In no event shall the **Company** pay more than $100,000 in any one **Policy Period** for any combination of **Claims** for covered expenses shown above. No retention applies to any claim or in the aggregate.

II.  COVERAGES:

Words shown in **bold** shall have the meaning provided in III. DEFINITIONS of this endorsement or as provided in III. DEFINITIONS of the Community Association Directors & Officers Liability Coverage Form, as applicable.

A.  Data Breach Expense

The **Company** will pay on behalf of the **Organization** up to the **Data Breach** Expense Limit of Liability stated in the schedule above, for reasonable and necessary expenses in item 1. – 6 below incurred by the **Organization** as a result of a **Data Breach.** The **Data Breach** must be first discovered by an **Insured** during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the **Data Breach** is first discovered by an **Insured**. The expenses below must be incurred within one (1) year of the reporting of such **Data Breach**:

**(1)** Development of a plan to assist the **Organization** in responding to a **Data Breach**;

**(2)** Data analysis or forensic investigation to assess the scope of a **Data Breach**;

**(3)** The development, printing and mailing of legally required notification letters to those affected by a **Data Breach;**

**(4)** Development of a website link for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent;

**(5)** Development of a customer relationship management system for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent**;**

**(6)** Public relations services or crisis management services retained by the **Organization** to mitigate the adverse affect on the **Organization's** reputation with customers, investors and employees resulting from a **Data Breach** that becomes public and only after legally required notification letters are sent.

The **Organization** must first report the **Data Breach** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above costs. The **Data Breach** must first occur during the **Policy Period**.

**B.** Identity Theft Expense

The **Company** will pay on behalf of a Director or Officer of the **Organization** up to the **Identity Theft** Expense Limit of Liability stated in the schedule above, for expenses, services or fees noted in item 1. – 3. below which are incurred by such Director or Officer after he or she has become a victim of **Identity Theft.** The **Identity Theft** must be first discovered by an **Insured** during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the **Identity Theft** is first discovered by an **Insured.** The expenses below must be incurred within one (1) year of the reporting of such **Identity Theft**:

**(1)** Credit monitoring services provided by a vendor of the **Company's** choice for the affected Director or Officer for up to one year following an **Identity Theft;**

**(2)** Additional application fees paid by a Director or Officer whose loan(s) were rejected based on incorrect credit information resulting from an **Identity Theft**;

**(3)** Notary fees, certified and overnight mail expenses paid by a Director or Officer in connection with reporting an **Identity Theft** to financial institutions, credit bureaus and agencies and law enforcement authorities.

Any Director or Officer of the **Organization** who is a victim of **Identity Theft** must first report the **Identity Theft** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above expenses, services or fees. The **Identity Theft** must first occur during the **Policy Period**.  In no event shall the **Company's** total **Policy Period** payment under this coverage be more than the "each claim" or "in the aggregate" limit shown on the Policy Declarations

## III. DEFINITIONS

**A.** "**Data Breach**" means the misappropriation or public disclosure, by electronic or non-electronic means, by the **Organization** and without the knowledge of, consent, or acquiescence of the President or member of the Board of Directors or any executive officer, of an individual(s) **Personally Identifiable Information** in the **Organization's** care, custody and control without the authorization or permission of the owner of such information.

**B.** "**Identity Theft**" means (1) the act of obtaining **Personally Identifiable Information**

belonging to a Director or Officer of the **Parent Organization** or a Director or Officer of the **Parent Organization's Subsidiary(ies)** without that person's authorization, consent or permission; and (2) the use of **Personally Identifiable Information** so obtained to make or attempt to make transactions or purchases by fraudulently assuming that person's identity.

**Identity Theft** does not mean any of the above committed directly or indirectly by a Director or Officer of the **Parent Organization** or a Director or Officer of the **Parent Organization's Subsidiary**(ies) or a family member of a Director or Officer.

There is no coverage for any **Identity Theft** Expense unless **Personally Identifiable Information** that is obtained without authorization, consent or permission is used to make or attempt to make transactions or purchases by fraudulently assuming the identity of a Director or Officer of the **Parent Organization** or a Director or Officer of the **Parent Organization's Subsidiary**(ies).

**C.   Personally Identifiable Information** means;

(1) information concerning an individual(s) that would be considered "non-public information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (as amended) and its implementing regulations including but not limited to Social Security numbers or account numbers correlated with names and addresses which is in an **Insured's** care, custody and control; and

(2) personal information as defined in any U.S. federal, state or local privacy protection law governing the control and use of an individual's personal and confidential information, including any regulations promulgated thereunder; and

(3) protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ("HIPPA") or the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH") (Public Law 111- 5), as amended, and any regulations promulgated thereto.

**Personally Identifiable Information** does not mean information that is available to the public which does not include otherwise protected personal information.

## IV. LIMITS OF LIABILITY AND RETENTION

**A.**  The Limit of Liability specified above as "in the aggregate" shall be the maximum liability for all expenses to which the coverage applies.

**B.**  The Limit of Liability specified above as the Limit for "each claim" shall be the maximum liability for expenses for each claim to which the coverage applies.

**C.**  The maximum Limit of Liability for any expenses provided by this endorsement shall be in addition to the LIMIT OF LIABILITY specified in the Policy Declarations IN THE AGGREGATE for the COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY COVERAGE FORM.

**D.**  The RETENTION shown on the Policy Declarations shall not apply to the expense coverage provided by this endorsement.

**E.**  Regardless of the amount of covered expenses incurred by the **Organization** under this endorsement, the maximum Limit of Liability for any one **Data Breach** or **Identity Theft**, shall be $50,000 each claim and in the aggregate.

**F.** Any one incident, interrelated incidents or series of similar or related incidents for which coverage is provided under this endorsement shall be treated as one incident subject to the maximum Limit of Liability available under this endorsement at the time the incident(s) is first reported to the **Company** regardless of whether the incident(s) continues and expenses are incurred by the **Organization** in any subsequent **Policy Period**(s).

## V. ADDITIONAL EXCLUSIONS

The insurance provided by this endorsement does not apply to:

**A.** Expense reimbursement resulting in any **Insured** gaining any profit, remuneration or advantage to which the **Insured** is not legally entitled.

**B.** Expense(s) arising from any incident(s) of which any **Insured** had notice before the inception date of this Policy; or any fact, circumstance, event, situation or incident which before the inception date of this Policy was the subject of any notice under any other similar policy of insurance or any future claims for expenses under this Policy based upon such pending or prior notice.

**C.** Expenses incurred by any **Subsidiary** of an **Organization** occurring prior to the date that such entity became a **Subsidiary** or incurred at any time that such entity is not a **Subsidiary**.

**D.** The portion of any expense(s) covered under this endorsement that is also covered under any other coverage pary of this Policy.

**E.** Reissuance of credit or debit cards or any other expense not shown in Section II, COVERAGES, sub-section A, **Data Breach** Expense.

## VI. COVERAGE LIMITATIONS

The following terms, conditions and exclusions in the COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY COVERAGE FORM, do not apply to this endorsement:

**1.** II. FULL PRIOR ACTS COVERAGE PROVISION

**2.** VI. LIFETIME OCCURRENCE REPORTING PROVISION

**3.** VII. EXTENDED REPORTING PERIOD.

**4.** IX. PROPERTY MANAGEMENT EXTENSION

**5.** X. SPOUSAL AND DOMESTIC PARTNER EXTENSION.

Otherwise, the terms and conditions of COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY COVERAGE FORM shall apply where applicable to give effect to this endorsement.

Coverage provided by your Policy and any endorsements attached thereto are amended by this endorsement where applicable. All other terms and conditions of this Policy remain unchanged. This endorsement is a part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown.

| This endorsement modifies insurance provided under the following: |
| --- |
| **COMMUNITY ASSOCIATION DIRECTORS & OFFICERS LIABILITY INSURANCE POLICY** |

## AMEND DEFINITION OF ORGANIZATION

It is agreed:

III. DEFINITIONS, Definition N., **Organization** is deleted in its entirety and replaced by:

**N.** **"Organization"** means:
 **(1)** the **Parent Organization**; and
 **(2)** any **Subsidiary** of the **Parent Organization**; and
 **(3)** any person or entity while acting in the capacity of receiver, bankruptcy trustee, or debtor in possession of **(1)** or **(2)** above under the United States bankruptcy law or equivalent status under the law of any other jurisdiction, but only while performing such duties on behalf of  any **Insured**.


All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown.

This page has been intentionally left blank.