# G R O U P E X H I B I T

# 5

(Part 1 of 5 Parts)

D E C L A R A T I O N

A N D

B Y - L A W S

ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP

OF

PREMISES AT

4300 W. FORD CITY DRIVE

CHICAGO, ILLINOIS

PURSUANT TO THE CONDOMINIUM PROPERTY ACT OF THE

STATE OF ILLINOIS

NAME -- FORD CITY CONDOMINIUM

This Instrument was Prepared By:

GILBERT H. HENNESSEY, JR.
and
W. RICHARD HELMS

JENNER & BLOCK
One IBM Plaza
Chicago, Illinois 60611

DECLARATION OF CONDOMINIUM OWNERSHIP

AND OF

EASEMENTS, RESTRICTIONS, COVENANTS AND BY-LAWS

FOR

"FORD CITY CONDOMINIUM"

---

## INDEX TO DECLARATION

| ARTICLE | SUBJECT | PAGE |
|---------|---------|------|
| I. | DEFINITIONS. | 3 |
| II. | UNITS. | 6 |
| III. | COMMON ELEMENTS. | 8 |
| IV. | GENERAL PROVISIONS AS TO UNITS AND COMMON ELEMENTS. | 9 |
| V. | ADMINISTRATION | 14 |
| VI. | ASSESSMENTS--MAINTENANCE FUND. | 33 |
| VII. | COVENANTS AND RESTRICTIONS AS TO USE AND OCCUPANCY. | 40 |
| VIII. | SALE, LEASING OR OTHER ALIENATION. | 45 |
| IX. | DAMAGE OR DESTRUCTION AND RESTORATION OF BUILDING. | 54 |
| X. | SALE OF THE PROPERTY | 56 |
| XI. | REMEDIES | 57 |
| XII. | GENERAL PROVISIONS | 60 |

EXHIBIT A--PLATS OF SURVEY OF THE PARCEL AND THE UNITS

EXHIBIT B--SCHEDULE OF PERCENTAGE INTERESTS IN COMMON ELEMENTS

DECLARATION OF CONDOMINIUM OWNERSHIP

AND OF

EASEMENTS, RESTRICTIONS, COVENANTS AND BY-LAWS

FOR

"FORD CITY CONDOMINIUM"

---

THIS DECLARATION made and entered into by AMERICAN NATIONAL BANK and TRUST COMPANY OF CHICAGO, a National Banking Association, as Trustee under Trust Agreement dated October 10, 1973, and known as Trust No. 45058, and not individually (hereinafter called "Declarant"):

W I T N E S S E T H   T H A T:

WHEREAS, Declarant is the legal titleholder of the following described real estate:

That part of the North three-fourths of Section 27, Township 38 North, Range 13, East of the Third Principal Meridian, described as follows: commencing at the intersection of a line 3536.00 feet East and parallel with the West line of said Section 27, and a line 20 feet North of and parallel with a line hereafter referred to as "Line A", which extends East from a point on the West line of said Section 27, which is 644.66 feet South from the Northwest corner of the South half of said Section 27, to a point on the East line of said Section 27, which is 619.17 feet South from the Northeast corner of said South half; thence West along said line 20.00 feet North, 122.72 feet to the point of beginning of the land herein described; thence South along a line making an interior angle of 88° 36' 00" 723.89 feet to the South line of the North half of the South half of said Section 27; thence

West along said South line of the North half of the South
half 890.01 feet, to a line 2506.00 feet East of and
parallel to the West line of said Section 27; thence North
along said line 2506.00 feet East, 436.29 feet, to a line
264.26 feet South of and parallel with said "Line A";
thence East along said line 264.26 feet South, 257.86 feet,
to a line 2763.86 feet East of and parallel with the West
line of said Section 27; thence North along said line
2763.86 feet East, 284.26 feet, to said line 20.00 feet
North of "Line A"; thence East along said line 20.00 feet
North, 649.84 feet to the point of beginning, in Cook
County, Illinois, together with easements appurtenant as
described in Document No. 24748418 recorded in the Office
of the Recorder of Deeds in said county;

and

WHEREAS, the above-described real estate is now
improved with seven (7) apartment buildings containing a
total of 319 residential apartment units and 38 garage
units, which buildings are commonly known as Ford City
Village Apartments, 4300 W. Ford City Drive, Chicago,
Illinois 60652; and

WHEREAS, it is the desire and intention of
Declarant to enable the "Property" (as hereinafter defined)
to be owned by Declarant and by each successor in interest
of the Declarant under that certain type or method of
ownership commonly known as "CONDOMINIUM" and to submit the
Property to the provisions of the Condominium Property Act
of the State of Illinois, as amended from time to time; and

WHEREAS, Declarant, acting under direction of the
parties authorized to direct Declarant, has elected to
establish, for the benefit of Declarant and for the mutual

benefit of all future owners or occupants of the Property,
or any part thereof, which shall be known as "Ford City
Condominium", certain easements and rights, in, under, over
and upon the Property and certain mutually beneficial
restrictions and obligations with respect to the proper use,
conduct and maintenance thereof; and

WHEREAS, Declarant has further elected to declare
that the several owners, mortgagees, occupants and other
persons acquiring any interest in the Property shall at all
times enjoy the benefits of and hold their interests
subject to the rights, easements, privileges and
restrictions hereinafter set forth, all of which are
declared to be in furtherance of a plan to promote and
protect the co-operative aspect of ownership and to
facilitate the proper administration of the Property and are
established for the purpose of enhancing and perfecting the
value, desirability and attractiveness of the Property.

NOW, THEREFORE, AMERICAN NATIONAL BANK and TRUST
COMPANY OF CHICAGO, a National Banking Association, as
Trustee aforesaid and not individually, as the legal
titleholder of the above described real estate, and for the
purposes above set forth, DECLARES AS FOLLOWS:

## ARTICLE 1

## DEFINITIONS

1.   For the purpose of brevity and clarity,

certain words and terms used in this Declaration are defined as follows:

| | |
|---|---|
| <u>Declaration</u>: | This instrument by which the Property is submitted to the provisions of the Condominium Property Act of the State of Illinois, and such Declaration as from time to time amended. |
| <u>Parcel</u>: | The entire tract of real estate above described. |
| <u>Building</u>: | All structures, attached or un-attached, containing one (1) or more Units located on the Parcel, as more specifically described in Article II hereof. |
| <u>Property</u>: | All the land, property and space comprising the Parcel, all improvements and structures constructed or contained therein or thereon, including the Building and all easements, licenses, permits, rights and appurtenances belonging thereto, and all fixtures, equipment and property intended for the mutual use, benefit or enjoyment of the Unit Owners. |
| <u>Unit</u>: | A part of the Property designed or intended for any type of independent use permitted by this Declaration. |
| <u>Residential Units</u>: | All Units delineated on the surveys attached hereto as Exhibit "A" which are intended to be used for housing purposes. |
| <u>Garage Units</u>: | All Units delineated on the surveys attached hereto as Exhibit "A" which are intended to be used for vehicular parking. |
| <u>Limited Common Elements</u>: | Patios designed for the exclusive use of one or more Residential Units having direct access thereto from such Units and those portions of the Garage other |

than the Garage Units for the use of the Owners of such Units.

Common Elements:    All portions of the Property except the Units.

Unit Ownership:    A part of the Property consisting of one Unit and the undivided interest in the Common Elements appurtenent thereto.

Parking Area:    That part of the Common Elements provided for parking automobiles as shown on Exhibit "A" attached hereto.

Person:    A natural individual, corporation, partnership, trustee or other legal entity capable of holding legal title to real property.

Owner:    The Person or Persons whose estate or interests, individually or collectively, aggregate fee simple absolute ownership of a Unit Ownership. For the purpose of Article VII hereof, unless otherwise specifically provided therein, the word "Owner" shall include any beneficiary of a trust, shareholder of a corporation or partner of a partnership holding legal title to a Unit Ownership.

Occupant:    Person, other than an Owner, in possession of a Unit.

Board:    The Board of Managers or the Board of Directors, as the case may be.

Condominium Property Act:    The Condominium Property Act of the State of Illinois as the same may be from time to time amended.

First Mortgagee:    The holder of a bona fide first mortgage, first trust deed or equivalent security interest covering a Unit Ownership.

## ARTICLE II

### UNITS

1.   Description and Ownership.  All Units in the
Building located on the Parcel are delineated on the
surveys attached hereto as Exhibit "A" and made a part of
this Declaration, and are legally described as follows:

Residential Units A/201 to A/210, both inclusive, A/301
to A/310, both inclusive, A/401 to A/410, both
inclusive, A/501 to A/510, both inclusive, A/601 to
A/610, both inclusive, A/701 to A/710, both inclusive,
A/801 to A/810, both inclusive, A/901 to A/910, both
inclusive, A/1001 to A/1010, both inclusive, A/1101 to
A/1110, both inclusive, A/1201 to A/1210, both
inclusive, and A/1301 to A/1310, both inclusive, A/1401
to A/1410, both inclusive, A/1501 to A/1510, both
inclusive, B-1/101, B-1/102, B-1/104, B-1/105, B-1/108,
B-1/201 to B-1/208, both inclusive, B-1/301 to B-1/308,
both inclusive, B-1/401 to B-1/408, both inclusive,
B-1/501 to B-1/508, both inclusive, B-2/101, B-2/102,
B-2/104, B-2/105, B-2/108, B-2/201 to B-2/208, both
inclusive, B-2/301 to B-2/308, both inclusive, B-2/401
to B-2/408, both inclusive, B-2/501 to B-2/508, both
inclusive, C-1/101, C-1/103, C-1/104, C-1/105, C-1/108,
C-1/201 to C-1/208 both inclusive, C-1/301 to C-1/308,
both inclusive, C-1/401 to C-1/408, both inclusive,
C-1/501 to C-1/508, both inclusive, C-2/101, C-2/103,
C-2/104, C-2/105, C-2/108, C-2/201 to C-2/208, both
inclusive, C-2/301 to C-2/308, both inclusive, C-2/401
to C-2/408, both inclusive, C-2/501 to C-2/508, both
inclusive, D-1/101 to D-1/108, both inclusive, D-1/201
through D-1/208, both inclusive, D-2/101 to D-2/103,
both inclusive D-2/105 to D-2/108, both inclusive, and
D-2/201 to D-2/208, both inclusive, and Garage Units
P-1 to P-38, both inclusive, as delineated on survey
of that part of the North three-fourths of Section 27,
Township 38 North, Range 13 East of the Third Principal
Meridian, described as follows:  commencing at the
intersection of a Line 3536.00 feet East and parallel
with the West line of said Section 27, and a Line 20
feet North of and parallel with a line hereafter refer-
red to as "Line A", which extends East from a point on
the West Line of said Section 27, which is 644.66 feet
South from the Northwest corner of the South half of
said Section 27 to a point on the East line of said
Section 27, which is 619.17 feet South from the
Northeast corner of said South half; thence West along
said line 20.00 feet North, 122.72 feet to the point

-6-

of beginning of the Land herein described; thence South
along a line making an interior angle of 88° 36' 00"
723.89 feet to the South line of the North half of the
South half of said Section 27; thence West along said
South line of the North half of the South half 890.01
feet, to a line 2506.00 feet East of and parallel to
the West line of said Section 27; thence North along
said line 2506.00 feet East, 436.29 feet, to a Line
264.26 feet South of and parallel with said "Line A";
thence East along said line 264.26 feet South, 257.86
feet, to a Line 2763.86 feet East of and parallel with
the West line of said Section 27; thence North along
said Line 2763.86 feet East, 284.26 feet, to said line
20.00 feet North of "Line A"; thence East along said
line 20.00 feet North, 649.84 feet to the point of
beginning, in Cook County, Illinois, together with
easements appurtenant as described in Document No.
24748418 recorded in the Office of the Recorder of Deeds
in said county; which survey is attached as Exhibit "A"
to Declaration of Condominium Ownership made by
American National Bank and Trust Company of Chicago, as
Trustee under Trust No. 45053, recorded in the Office
of the Recorder of Deeds, Cook County, Illinois, as
Document No. _____.

It is understood that each Unit consists of the space
enclosed or bounded by the horizontal and vertical planes
set forth in the delineation thereof on Exhibit "A". The
legal description of each Unit shall consist of the
identifying number or symbol of each Unit as shown on
Exhibit "A". Every deed, lease, mortgage or other
instrument may legally describe a Unit by its identifying
number or symbol as shown on Exhibit "A", and every such
description shall be deemed good and sufficient for all
purposes. An Owner or Owners may, at their own expense,
subdivide or combine Units and locate or relocate Common
Elements affected or required thereby, in accordance with
the requirements of the Condominium Property Act.

2.   <u>Restriction on Ownership of Garage</u>
<u>Units</u>.   No Garage Unit may be transferred to and owned by any
Person other than the Owner of a Residential Unit or the
Board.

3.   <u>Certain Structures Not Constituting Part</u>
<u>of a Unit</u>.   No Owner shall own any pipes, wires, conduits,
public utility lines or structural components running
through a Unit and serving more than that Unit except as a
tenant in common with all other Owners.

<u>ARTICLE III</u>

<u>COMMON ELEMENTS</u>

1.   <u>Description</u>.   Except as otherwise in this
Declaration provided, the Common Elements shall consist of
all portions of the Property except the Units.   Without
limiting the generality of the foregoing, the Common
Elements shall include the land, outside walks and
driveways, landscaping, stairways, entrances and exits,
patios, exterior windows, hallways, lobbies, swimming pool,
tennis courts, corridors, storage areas, laundryrooms,
engineer's apartment, roofs, maintenance room, outdoor
Parking Areas, underground Garage, garbage rooms, boiler
rooms, bicycle rooms, Edison Co. rooms, structural parts of
the Building, basements, pipes, ducts, flues, chutes,
conduits, wires and other utility installations to the

outlets, and such component parts of walls, floors and
ceilings as are not located within the Units.

2.   <u>Ownership of Common Elements</u>.  Each Owner
shall own an undivided interest in the Common Elements as
a tenant in common with all other Owners of the Property,
and, except as otherwise limited in this Declaration, shall
have the right to use the Common Elements for all purposes
incident to the use and occupancy of each Unit for housing
purposes, and such other purposes permitted by this
Declaration, which right shall be appurtenant to and run
with each Unit.  The extent or amount of such ownership
shall be expressed by a percentage amount and, once
determined, shall remain constant, and may not be changed
without unanimous approval of all Owners except as other-
wise provided by the Condominium Property Act.  Declarant
has so determined each Unit's corresponding percentage of
ownership in the Common Elements as set forth in Exhibit
"B" attached hereto.

### ARTICLE IV

#### GENERAL PROVISIONS AS TO UNITS AND COMMON ELEMENTS

1.   <u>Submission of Property to the Condominium
Property Act</u>.  The Property is hereby submitted to the
provisions of the Condominium Property Act.

2.   <u>No Severance of Ownership</u>.  No Owner shall
execute any deed, mortgage, lease or other instrument

affecting title to a Unit Ownership without including therein both the Owner's interest in the Unit and the Unit's corresponding percentage of ownership in the Common Elements, it being the intention hereof to prevent any severance of such combined ownership.  Any such deed, mortgage, lease or other instrument purporting to affect the one without includng also the other shall be deemed and taken to include the interest so omitted even though the latter is not expressly mentioned or described therein.

     3.   <u>Easements</u>.

     (a)  <u>Encroachments</u>.  In the event that, by reason of the construction, repair, reconstruction, settlement or shifting of the Building, any portion of the Common Elements encroaches or shall hereafter encroach upon any portion of any Unit, or any portion of any Unit encroaches or shall hereafter encroach upon any portion of the Common Elements or any other Unit, or, if by reason of the design or construction of any Unit, it shall be necessary or advantageous to an Owner to use or occupy any portion of the Common Elements for any reasonable use appurtenant to that Unit, which will not unreasonably interfere with the use or enjoyment of the Common Elements by other Owners, or, if by reason of the design or construction of utility and ventilation systems, any mains, pipes, ducts or conduits serving more than one Unit encroach or shall hereafter

encroach upon any portion of any Unit, valid mutual
easements for the maintenance of such encroachment and for
such use of the Common Elements are hereby established and
shall exist for the Owners of such Units or the Common
Elements, as the case may be, so long as all or any part of
the Building shall remain standing; provided, however, that
in no event shall a valid easement for any encroachment or
use of the Common Elements be created in favor of any Owner
if such encroachment or use is detrimental to or interferes
with the reasonable use and enjoyment of the Property by
the other Owners and if it occurred due to the intentional,
wilful or negligent conduct of any Owner or that of his
agent.

(b)  Utility Easements.  The Illinois Bell
Telephone Company, Commonwealth Edison Company, Peoples Gas
Light & Coke Company and all other public utilities serv-
ing the Property are hereby granted the right to lay, con-
struct, renew, alter, remove, operate and maintain
conduits, cables, pipes, wires, transformers, switching
apparatus and other equipment, into and through the Common
Elements for the purpose of providing utility services to
the Property.  The Board may hereafter grant additional
utility easements for the benefit of the Property over,
under, along and on any portion of the Common Elements, and
each Owner hereby grants to the Board an irrevocable power

of attorney to execute, acknowledge, register and record for and in the name of all the Owners, such instruments as may be necessary to effectuate the foregoing.

(c) <u>Parking Area</u>. The outdoor Parking Area shall be part of the Common Elements and be used for parking automobiles. The Parking Area shall be used and operated in such manner and subject to such rules and regulations as the Board may prescribe from time to time consistent with the terms of the Declaration.

(d) <u>Storage Area</u>. The storage area for the Owners' personal property in the Building outside of the Units shall be part of the Common Elements, and the exclusive use and possession of the storage area shall be allocated among the Owners in such manner and subject to such rules and regulations as the Board may prescribe. Each Owner shall be responsible for such Owner's personal property in the storage area. The Board and the Association shall not be considered the bailee of such personal property and shall not be responsible for any loss or damage thereto whether or not due to the negligence of the Board and/or the Association.

(e) <u>Limited Common Elements</u>. Patios designed for the exclusive use of one or more Residential Units having direct access to such areas shall be Limited Common Elements, the exclusive right to possession and use of

which shall be limited to the Occupants of such Units.
Portions of The Garage other than the Garage Units are
Limited Common Elements for the benefit of the Owners of
such Garage Units.

(f)  <u>Easements to Run with the Land</u>.  All
easements and rights described herein are easements
appurtenant, running with the land and, so long as the
Property is subject to the provisions of this Declaration,
shall remain in full force and effect, and shall inure to
the benefit of and be binding on Declarant, its successors
and assigns, and any Owner, Occupant, purchaser, mortgagee
and other Person having an interest in the Property, or any
part thereof.  Reference in the respective deeds of
conveyance, or in any mortgage or trust deed or other
evidence of obligation, to the easements and rights
described in this Article, or described in any other part
of this Declaration, shall be sufficient to create and
reserve such easements and rights to the respective
grantees, mortgagees and trustees of such Unit Ownerships
as fully and completely as though such easements and rights
were recited fully and set forth in their entirety in such
documents.

4.  <u>Real Estate Taxes</u>.  It is intended that real
estate taxes are to be levied by the County Assessor on
each Unit Ownership as provided in the Condominium Property

Act.  In the event such taxes are levied on the Property
as a whole, such taxes shall be a common expense.

<u>ARTICLE V</u>

<u>ADMINISTRATION</u>

1.   <u>Administration of the Property</u>.  The
direction and administration of the Property shall be vested
in a Board which shall consist of thirteen (13) individuals
who shall be elected in the manner hereinafter set forth;
provided, however, that for a period commencing on the date
of recording of the Declaration and ending with the date
of the initial meeting of the voting members, the Board
shall consist of three (3) individuals selected by
Declarant.  Each member of the elected Board shall be an
Owner; provided, however, that in the event an Owner is a
corporation, partnership, trust or other legal entity other
than a natural individual, then any officer, director or
other designated agent of such corporation, partner or
other designated agent of such partnership, beneficiary or
other designated agent of such trust or manager of such
other legal entity, shall be eligible to seve as a member
of the Board.

2.   <u>Association</u>.  Declarant, upon the sale of one
or more Units, and prior to the election of the first
Board, and the Board at any time thereafter, may cause to
be incorporated a not-for-profit corporation under the

General Not-For-Profit Corporation Act of the State of
Illinois, to be called "Ford City Condominium" or a name
similar thereto, which corporation (herein called the
"Association") shall be the governing body for all the
Owners for the maintenance, repair, replacement,
administration and operation of the Property.  The Board of
Directors of the Association shall be deemed to be the
Board of Managers referred to herein and in the Condominium
Property Act.  Upon the formation of the Association, every
Owner shall be a member therein, which membership shall
automatically terminate upon the sale, transfer or other
disposition of such Owner's Unit Ownership, at which time
the new Owner shall automatically become a member therein.
The Association shall have one (1) class of membership.

     3.   <u>Voting Rights</u>.  There shall be one person
with respect to each Unit Ownership who shall be entitled
to vote at any meeting of the Owners.  Such person shall
be known (and hereinafter referred to) as a "voting
member".  Such voting member may be the Owner or one of the
group composed of all the Owners of a Unit Ownership, or
may be some person designated to act as proxy for such
Owner(s) and who need not be an Owner.  Such designation
shall be made in writing to the Board and shall be revocable
at any time by actual notice to the Board of the death or
judicially declared incompetence of any designator, or by

written notice to the Board by the Owner(s).  Any or all
of such Owners may be present at any meeting of the voting
members and (those constituting a group acting unanimously)
may vote or take any other action as a voting member in
person or by proxy.  The total number of votes of all voting
members shall be 100, and each voting member shall be
entitled to the number of votes equal to the percentage of
ownership in the Common Elements applicable to such voting
member's Unit Ownership as set forth in Exhibit "B".
Declarant shall be the voting member with respect to any
Unit Ownership owned by Declarant.  When 30% or fewer of the
Units, by number, possess over 50% in the aggregate of the
votes in the Association, any percentage vote of voting
members specified in the Condominium Property Act or in this
Declaration shall require the specified percentage by
number of Units rather than by percentage of interest in the
Common Elements allocated to Units that would otherwise be
applicable.

      4.    <u>Meetings</u>.

      (a)  Meetings of the voting members shall be
held at the Property or at such other place in the State
of Illinois as may be designated in any notice of a
meeting.  The presence in person or by proxy at any meeting
of the voting members having a majority of the total votes
shall constitute a quorum.  Unless otherwise expressly

-16-

provided herein, any action may be taken at any meeting of
the voting members at which a quorum is present upon the
affirmative vote of the voting members having a majority
of the total votes present at such meeting.  Matters
subject to affirmative vote of voting members having
two-thirds (2/3) or more of the total votes at a meeting
duly called for that purpose, shall include, but not be
limited to:  (1) merger or consolidation of the Association;
(2) sale, lease, exchange, mortgage, pledge or other
disposition of all, or substantially all of the property and
assets of the Association; and (3) the purchase or sale of
land or of Units on behalf of all Owners.

   (b)  <u>Annual Meeting</u>.  The initial meeting of
the voting members shall be held upon not less than ten
(10) days' prior written notice given by Declarant to the
voting members.  Such initial meeting must be held not
later than sixty (60) days after the conveyance by Declarant
of 75% of the Units or three (3) years after the recording
of this Declaration, whichever is earlier.  The formation
of the Association by Declarant shall not require Declarant
to call the initial meeting of the voting members any
earlier than provided in the preceding sentence.
Thereafter, there shall be an annual meeting of the voting
members on the first Tuesday of October of each succeeding
year thereafter at 7:30 P.M., or at such other reasonable

time or date (not more then thirty (30) days before or
after such date) as may be designated in a written notice
from the Board.

(c)  Special Meetings.  Special meetings of
the voting members may be called at any time for the
purpose of considering matters which, by the terms of this
Declaration, require the approval of all or some of the
voting members, or for any other reasonable purpose.
Special meetings shall be called by written notice,
authorized by the President of the Association, a majority
of the Board, or by the voting members having one-fiftn
(1/5) or more of the total votes.

5.   Notices of Meetings.  Notices of meetings re-
quired to be given herein shall be given pursuant to the
provisions of Paragraphs 7 and 8 of Article XII herein.
Written notice of any membership meeting shall be mailed
or delivered as herein provided giving voting members no
less than ten (10) and no more than thirty (30) days'
notice of the time, place and purpose of such meeting.

6.   Board of Managers (Board of Directors).

(a)  At the initial meeting the voting
members shall by vote of a plurality elect a Board.
Commencing with the date of the initial meeting of the
members, the number of directors shall be thirteen.
Commencing with the date of the initial meeting of the

members, each director shall hold office without compensation until the next annual meeting of members and until his successor shall have been elected and qualified. On and after the date of said initial meeting, only an Owner may be a director of the Association.  In the event that an Owner is a corporation, partnership, trust, or other legal entity other than a natural person or persons, then any shareholder, officer or director of such corporation, partner of such partnership, beneficiary or individual trustee of such trust, or manager of such other legal entity, may be eligible to serve as a director.  At the initial and at each annual election of the directors at least three directors shall be elected from among the Unit Owners of Building A, two directors shall be elected from among the Unit Owners in each of Buildings B-1, B-2, C-1, C-2 and one director shall be elected from among the Unit Owners in each of buildings D-1 and D-2 located on the Property.  No Board member shall be elected for a term of more than one (1) year, but Board members may succeed themselves.  Members of the Board shall receive no compensation for their services, unless expressly allowed by the Board at the direction of the voting members having two-thirds (2/3) or more of the total votes.  Vacancies on the Board, including vacancies due to any increase in the number of individuals on the Board, shall be filled by the

voting members present at the next annual meeting or at a
special meeting of the voting members called for such
purpose.  Except as otherwise provided in this Declaration,
the Property shall be managed by the Board and the Board
shall act by majority vote of those present at its meetings
when a quorum exists.  Meetings of the Board may be called,
held and conducted in accordance with such regulations as
the Board may adopt.  Meetings of the Board shall be open
to any Owner, and notice of such meetings shall be mailed
at least forty-eight (48) hours prior thereto, unless a
written waiver of such notice is signed by the person or
persons entitled to such notice before the meeting is con-
vened.  The Board shall meet at least four (4) times
annually.  A majority of the total members on the Board shall
constitute a quorum.

(b)  Officers.  The Board shall elect the
following officers: a President who shall be a member of
the Board and preside over both its meetings and those of
the voting members, and who shall be the chief executive
officer of the Board and the Association; a Secretary who
shall keep the minutes of all meetings of the Board and of
the voting members and who shall, in general, perform all
the duties incident to the office of Secretary; a Treasurer
to keep the financial records and books of account; and
such additional officers as the Board shall see fit to

elect. Such officers shall serve at the will of the Board, which shall fill any vacancies. No officer shall be elected for a term of more than one (1) year, but officers may succeed themselves.

(c) Removal. Any Board member may be removed from office by affirmative vote of the voting members having two-thirds (2/3) or more of the total votes, at any annual or special meeting of the voting members called for that purpose. A successor to fill the unexpired term of a Board member so removed may be elected by the voting members at the same meeting or any subsequent meeting called for that purpose. This right of removal shall not apply to any Board member selected by Declarant.

7. General Powers of the Board. The Board for the benefit of all the Owners, shall acquire and shall pay for out of the maintenance fund hereinafter provided for, the following:

(a) Heat, water, waste removal, professional management fees, gas, electricity and telephone and other necessary utility service for the Common Elements and (if not separately metered or charged) for the Units.

(b) Insurance on the Property insuring the Common Elements and the Units against loss or damage by fire, lightning and those risks now or hereafter contained in the extended coverage, vandalism and malicious mischief

endorsements, for the full insurable replacement value of the Common Elements and the Units written in the name of, and the proceeds thereof shall be payable to the members of the Board, as trustees for each of the Owners in the percentages established in Exhibit "B". Prior to obtaining any such policy of insurance, or any renewal thereof, the Board, at its option, may obtain an appraisal from a qualified appraiser for the purpose of determining the full insurable replacement value of the Common Elements and the Units for the amount of insurance to be effected pursuant hereto. The cost of any such appraisal shall be a common expense. Each Owner shall be required to report all additions, alterations or improvements to such Owner's Unit promptly in writing to the Board, without prior request from the Board or the managing agent, and to reimburse the Board for any additional insurance premiums attributable thereto. The Board shall not be responsible for obtaining insurance on such additions, alterations or improvements unless or until such Owner shall make such report and request the Board in writing to obtain such insurance, and shall make arrangements satisfactory to the Board to reimburse the Board for any such additional premiums; and upon the failure of such Owner so to so, the Board shall not be obligated to apply any insurance proceeds to restore the affected Unit to a condition better than the condition

existing prior to the making of such additions, alterations or improvements. Any such policy of insurance (1) shall contain a standard mortgage clause endorsement in favor of each First Mortgagee as its interest may appear, (2) shall provide that the insurance, as to the interest of the Board, shall not be invalidated by any act or neglect of any Owner, (3) shall provide that notwithstanding any provision thereof which gives the insurer an election to restore damage in lieu of making a cash settlement therefor, such option shall not be exercisable in the event the Owners elect to sell the Property or remove the Property from the provisions of the Condominium Property Act, (4) shall contain an endorsement to the effect that such policy shall not be terminated for non-payment of premium without at least ten (10) days' prior written notice to each First Mortgagee, (5) shall contain a clause or endorsement whereby the insurer waives any right to be subrogated to any claim against the Association, its officers, members of the Board, the Declarant and its beneficiaries, the managing agent, if any, their respective employees and agents, the Owners and Occupants, and (6) shall contain a "Replacement Cost Endorsement". Notwithstanding the issuance of a standard mortgage clause endorsement, any losses under any such policy of insurance shall be payable, and all insurance proceeds recovered thereunder shall be applied and

disbursed in accordance with the provisions of this
Declaration and the Condominium Property Act; provided,
however, that if the Board fails to perform all of the con-
ditions precedent required by any such policy of insurance,
and fails to collect the amount of the loss within the time
required by law, and any First Mortgagee is required to
avail itself of its rights under the standard mortgage
clause endorsement to collect the proceeds of any such
policy of insurance, any amounts so collected through the
efforts of the First Mortgagee shall be applied as directed
by the First Mortgagee. The Board may engage the services
of a bank or trust company authorized to do trust business
in Illinois having a capital of not less than $5,000,000.00
to act as Insurance Trustee and to receive and disburse the
insurance proceeds resulting from any loss upon such terms
as the Board shall determine consistent with the provisions
of this Declaration. In the event the lowest of three (3)
bids from reputable contractors for making all repairs
required by any loss shall exceed $60,000.00 the Board upon
written demand of any First Mortgagee shall engage the
services of an Insurance Trustee as aforesaid. The fees of
such Insurance Trustee shall be a common expense.

      (c) Comprehensive public liability and
property damage insurance in such limits as the Board shall
deem desirable insuring the members of the Board, the

Association, the managing agent, if any, their agents and employees. The Declarant (including its beneficiary) shall be included as an additional insured in its capacity as Owner and Board member. The Owners and Occupants shall be included as additional insureds but only with respect to that portion of the premises not reserved for their exclusive use. The insurance shall cover claims of one or more insured parties against other insured parties. The insurance shall contain a waiver of any rights to subrogation by the insuring company against any of the above named insured persons.

(d)  Workmen's compensation insurance as may be necessary to comply with applicable laws and such other forms of insurance as the Board in its judgment shall elect to effect.

(e)  Upon authorization by the affirmative vote of the voting members having at least one-half (1/2) or more of the total votes, at a meeting duly called for such purpose, the Board, acting on behalf of all Owners, shall have the power to seek relief from or in connection with the assessment or levy of real property taxes, special assessments and any other special taxes or charges of the State of Illinois or of any political subdivision thereof, or other lawful taxing or assessing body, which are authorized by law to be assessed against and levied upon the

Unit Ownerships, and in connection with any other matter where the respective interests of the Owners are deemed by the Board to be similar and nonadverse to each other. The cost of all such services shall be a common expense.

(f) Landscaping, gardening, snow removal, painting, cleaning, tuckpointing, maintenance, decorating, repair and replacement of the Common Elements (but not including the windows, sliding glass doors appurtenant to the Units and the interior surfaces of the Units and of the hallway doors appurtenant thereto, which the Owners shall paint, decorate, maintain and repair) and such furnishings and equipment for the Common Elements as the Board shall determine are necessary and proper, and the Board shall have the exclusive right and duty to acquire the same for the Common Elements.

(g) Any other materials, supplies, furniture, labor, services, maintenance, repairs, structural alterations or assessments which the Board is required to secure or pay for pursuant to the terms of this Declaration or by law or which in its opinion shall be necessary or proper for the maintenance and operation of the Property as a first class condominium apartment project or for the enforcement of these restrictions.

(h) Any amount necessary to discharge any mechanic's lien or other encumbrance levied against the

entire Property or any part thereof which may in the opinion
of the Board constitute a lien against the Property or
against the Common Elements, rather than merely against the
interest therein of a particular Owner.  Where one or more
Owners are responsible for the existence of such lien, they
shall be jointly and severally liable for the cost of
discharging it and any costs incurred by the Board by reason
of such lien shall be specially assessed to such Owners.
As to any such lien placed upon any Unit or upon the Common
Elements the Owner(s) who created the basis for such lien
shall be held responsible for such lien, regardless of
whether such lien be false, fraudulent or bona fide.

(i)  Maintenance and repair of any Unit if
such maintenance or repair is necessary, in the opinion of
the Board to protect the Common Elements or any other
portion of the Property, and the Owner of such Unit has
failed or refused to perform such maintenance or repair
within a reasonable time after written notice of the
necessity of such maintenance or repair delivered by the
Board to such Owner; provided that the Board shall levy a
special assessment against such Owner for the cost of such
maintenance or repair.

(j)  The Board or its agents, upon reasonable
notice, may enter any Unit and any patio when necessary in
connection with the construction, maintenance, testing or

-27-

inspection for which the Board is responsible. Such entry shall be made with as little inconvenience to any Owner as practicable, and any damage caused thereby shall be repaired by the Board at the expense of the maintenance fund.

(k)  The Board's powers hereinabove enumerated shall be limited in that the Board shall have no authority to acquire and pay for out of the maintenance fund any structural alterations, capital additions to, or capital improvements of the Common Elements (other then for purposes of repairing, replacing or restoring portions of the Common Elements, subject to all the provisions of this Declaration) requiring an expenditure in excess of $40,000.00 without in each case the prior approval of the voting members having two-thirds (2/3) or more of the total votes.

(1)  All agreements, contracts, deeds, leases, vouchers for payment of expenditures and other instruments shall be signed by such officer or officers, agent or agents of the Board and in such manner as from time to time shall be determined by written resolution of the Board. In the absence of such determination by the Board, such documents shall be signed by the Treasurer and countersigned by the President.

(m)  The Board, without approval from any of the voting members except as hereinafter set forth, may